**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VIRGINIA SOCIETY FOR HUMAN LIFE,
INCORPORATED; ANDREA SEXTON,
<u>Plaintiffs-Appellants,</u>

v.

DONALD S. CALDWELL, Attorney for
the Commonwealth of Virginia for
the City of Roanoke, in his official
capacity and as a representative of
the class of Attorneys for the
Commonwealth of Virginia;

PAMELA M. CLARK, in her official
capacity as Chairman of the
Virginia Board of Elections;
GEORGE M. HAMPTON, SR., Dr., in
his official capacity as Vice-
Chairman of the Virginia Board of
Elections; M. BRUCE MEADOWS, in
his official capacity as Secretary of
the Virginia Board of Elections,
<u>Defendants-Appellees.</u>

No. 97-1292

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-95-1042-R)

Argued: October 2, 1997

Decided: July 21, 1998

Before MURNAGHAN and WILKINS, Circuit Judges, and
HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Murnaghan wrote the opinion, in which Judge Wilkins and Judge Herlong joined.

_____

**COUNSEL**

**ARGUED:** James Bopp, Jr., BOPP, COLESON & BOSTROM, Terre Haute, Indiana, for Appellants. Alice Ann Berkebile, Assistant Attorney General, Richmond, Virginia, for Appellees. **ON BRIEF:** John K. Abegg, BOPP, COLESON & BOSTROM, Terre Haute, Indiana, for Appellants. Richard Cullen, Attorney General of Virginia, Richmond, Virginia, for Appellees.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

This case involves a challenge to Virginia's election laws, Va. Code Ann. §§ 24.2-901, -908, -910 & -1014 (Michie 1997). Those laws require certain people or organizations who spend money "for the purpose of influencing the outcome of any election," Va. Code Ann. § 24.2-901 (Michie 1997), to file a statement of organization, see Va. Code Ann. § 24.2-908 (Michie 1997), and report their expenditures, see Va. Code Ann. § 24.2-910 (Michie 1997), and also require any writings made "for the purpose of influencing the outcome of an election for public office" to identify the author, Va. Code Ann. § 24.2-1014 (Michie 1997).

The Virginia Society for Human Life (VSHL), the plaintiff-appellant, is a nonprofit organization that conducts issue advocacy by periodically preparing voter guides that do not expressly advocate the election or defeat of any candidate but rather state the candidates' views on public issues.[1] VSHL and one of its members sued Virginia's Commonwealth's Attorneys, alleging that these laws chill the plaintiffs' constitutionally protected speech because predecessors to

_____

[1] We have assumed for purposes of this appeal that VSHL conducts only issue advocacy, as asserted in its pleadings.

2

the current statutes had been used to impose unconstitutional prior restraints on issue advocacy groups in the past. The plaintiffs sought a declaration that the referred-to provisions of the election law facially violate the First Amendment to the United States Constitution under the Supreme Court's decisions in Buckley v. Valeo, 424 U.S. 1, 78-80 (1976) (per curiam) (interpreting federal election laws that require the disclosure of expenditures to apply only to expenditures used expressly to advocate the election or defeat of a clearly identified candidate, thereby avoiding the First Amendment problems that would arise from a reporting requirement that applied to funds expended in issue discussion), and McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995) (holding that an Ohio statute prohibiting anonymous issue advocacy was an unconstitutional abridgment of speech), if the statutes apply to issue advocacy groups like VSHL. Plaintiffs also sought an injunction barring the laws' enforcement.

The district court recognized that the plain language of the statutes suggests that they apply to issue advocacy groups such as VSHL. See Virginia Soc'y for Human Life, Inc. v. Caldwell, 906 F. Supp. 1071, 1075-76 (W.D. Va. 1995). Because there was little Virginia case law interpreting the statutes, the court certified to the Supreme Court of Virginia the question whether they were susceptible to a narrowing construction that would save their constitutionality. See id. at 1075; Virginia Soc'y for Human Life, Inc. v. Caldwell, No. 95-1042-R (W.D. Va. Nov. 27, 1995) (order of certification to the Supreme Court of Virginia). But the Supreme Court of Virginia "rejected" the certified questions without explanation. See Virginia Soc'y for Human Life, Inc. v. Caldwell, No. 95-2122 (Va. Jan. 18, 1996). About four months later, the Virginia General Assembly amended the statutes (the parties contest the materiality of the amendments).

To save their constitutionality, the district court then narrowly construed the new provisions based on the Supreme Court's interpretation of the federal election laws in Buckley, 424 U.S. at 79-80. The district court found that the phrase "for the purpose of influencing" in the Virginia statutes was "a term of art whose well-established meaning excludes issue advocacy." Virginia Soc'y for Human Life, Inc. v. Caldwell, No. 95-1042-R, slip op. at 4 (W.D. Va. Feb. 19, 1997). It did so because it believed that where a "statute[is] reasonably suscep-

3

tible of two interpretations, by one of which it would be unconstitutional and by the other valid, it is our plain duty to adopt that a [sic] construction which will save the statute from constitutional infirmity." Id. at 5 (quoting United States ex rel. Attorney General of the United States v. Delaware and Hudson Co., 213 U.S. 366, 407 (1909) (regarding a federal statute)) (internal quotation marks omitted). Because VSHL conducts only issue advocacy and not express candidate advocacy, the district court dismissed VSHL's claim for lack of standing. See id. at 7.

But such a ruling by a federal district court is not binding upon state courts. A federal district court "lack[s] jurisdiction authoritatively to construe state legislation." United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 369 (1971). As the Seventh Circuit has explained:

> [A]n important difference between interpretation of a state statute by a federal court and by a state court is that only the latter interpretation is authoritative. If the district judge [reads the state's] statute so narrowly as to obviate all constitutional questions, it would still be possible for the state to prosecute people for violating the statute as broadly construed, because the enforcement of the statute would not have been enjoined.

Kucharek v. Hanaway, 902 F.2d 513, 517 (7th Cir. 1990). The district court's holding, that the Virginia statutes at issue did not apply to VSHL, could not prevent a private party from suing to enjoin VSHL's distribution of campaign literature based on the statutes, nor could it prevent the state from prosecuting VSHL for failing to comply with the statutes. Because the scope of the statutes' applicability had not authoritatively been narrowed and by their plain terms they applied to VSHL, VSHL's speech was still chilled by the statutes. VSHL therefore brought this appeal.

Federal courts have the power and the duty to adopt narrowing constructions of federal statutes to avoid constitutional difficulties "if such a construction is fairly possible," but "federal courts are without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." Boos v. Barry, 485

4

U.S. 312, 330-31 (1988) (emphasis added). It was not apparent to us that the election laws at issue were readily susceptible to a construction by which they did not apply to VSHL. In fact, a de novo review of the text, structure and history of the election laws at issue suggested to us that they did apply to issue advocacy groups such as VSHL.

A straightforward reading of the text supported VSHL's claims that its issue advocacy is encompassed within "expenditures for the purpose of influencing the outcome of any election." Va. Code Ann. § 24.2-901 (Michie 1997). Black's Law Dictionary defines "influence" as "[t]o affect, modify or act upon by physical, mental or moral power, especially in some gentle, subtle, and gradual way," id. at 779 (6th ed. 1990). Webster's Third New International Dictionary defines "influence" as "to affect or alter the conduct, thought, or character of by indirect or intangible means," id. at 1160 (1993). Under either definition, the voter guides published by VSHL setting out candidates' positions on public issues such as abortion were distributed for the purpose of influencing the outcome of an election.

Furthermore, section 901(B) specifically excludes from the definition of "political committee"**2** those organizations that do not engage in express candidate advocacy if they are also tax-exempt under 26 U.S.C. § 501(c)(3).**3** The most logical reading of this provision, we believed, is that an organization that does not engage in express advocacy but is not tax-exempt under § 501(c)(3) is implicitly included in the definition of "political committee." Expressio unius est exclusio alterius. VSHL does not engage in express advocacy, but is tax exempt under 26 U.S.C. § 501(c)(4), not § 501(c)(3), and thus appears to be included in the definition of "political committee."

The district court asserted that the Virginia General Assembly "presumably was aware of Buckley's construction of the phrase `for the purpose of influencing' to include only express candidate advocacy" when the Assembly enacted and amended sections 24.2-901 to -1014.

---

**2** And from the definitions of"political action committee" and "person" as well.
**3** The exclusion is only for the purpose of certain sections of the chapter, including sections 24.2-908 & 910.

5

Virginia Soc'y for Human Life, Inc., No. 95-1042-R, slip op. at 5. However, it appeared to us extremely unlikely that the General Assembly, after reading Buckley and learning that the term "for the purpose of influencing" was unconstitutionally vague and required a narrowing construction to save it, would then decide to use that term, without explanation, in its statute. If the General Assembly meant to define "political committee" as an organization which expended funds "for express candidate advocacy" only, it presumably would have said so explicitly.

The language of section 24.2-910, in conjunction with the definition of "expenditure" in section 24.2-901, provided further evidence that the Virginia election code was intended to regulate issue advocacy groups. Section 24.2-910(B) requires any person who makes independent expenditures of a minimum amount to maintain records and report those expenditures. The expenditures to be reported explicitly include not only "funds expended for the purpose of influencing the outcome of any election for public office," Va. Code Ann. § 24.2-910(B)(1) (Michie 1997), but also funds expended to publish "any material referring to a candidate by name, description, or other reference and (i) advocating his election or defeat, (ii) setting forth his position on any public issue, voting record, or other official acts, or (iii) otherwise designed to influence individuals to cast their votes for or against him," Va. Code Ann. § 24.2-910(B)(2) (Michie 1997). We concluded that these subsections were obviously intended to refer not only to express candidate advocacy, but also to materials which simply describe a candidate's voting record in the hopes of influencing people's votes, that is, issue discussion.

A look at the recent amendments to section 24.2-910 confirmed the unlikelihood of the district court's interpretation. When this case was originally filed, the statute required "any person or political committee making independent expenditures" to "maintain records and report . . . expenditures made of: . . . 3. Any funds in any amount expended to publish or broadcast to the public any material promoting or opposing a question submitted to the voters in a referendum." Va. Code Ann. § 24.2-910(B)(3) (Michie 1995); see also 1996 Va. Acts ch. 1042. The district court held that the Virginia General Assembly intended the phrase "for the purpose of influencing the outcome of an election" in the definition of "expenditure" to mean only "expendi-

6

tures for express candidate advocacy." <u>Virginia Soc'y for Human Life, Inc.</u>, No. 95-1042-R, slip op. at 6. If this were correct, then the pre-amendment section 24.2-910(B)(3) would have meant that a person must report funds spent for express candidate advocacy regarding questions submitted to the voters in a referendum. The pre-amendment version of the statute was not readily susceptible of this interpretation.

We believed that, as with the definition of "political committee," if the General Assembly had meant to require reporting only of funds expended on materials that expressly advocated the election or defeat of a candidate, it would have said so explicitly. In fact it says just that in subsection 24.2 910(B)(2)(i) -- and then goes on in subsections (ii) and (iii) to require the reporting of funds spent on other materials. It appeared to us that the Assembly meant to regulate those other materials as well.

However, no Virginia appellate court had interpreted the statutes at issue. The statutes had been applied by Virginia trial courts, but those decisions were based on previous versions of the since-amended law. Despite VSHL's repeated assertions that the old "statutory language . . . is identical in all substantive respects to the provisions at issue here," we were uncertain whether the intervening amendments along with recent advisory opinions of the Virginia Attorney General might not influence Virginia courts to interpret the current statutes differently.

Rather than simply reversing the district court's dismissal and remanding for an evaluation of the merits of VSHL's constitutional challenge, therefore, we believed that the Supreme Court of Virginia should be given another chance authoritatively to interpret its laws so as to cure any constitutional infirmity. We accordingly certified to the Supreme Court of Virginia the following question:

> Whether Va. Code Ann. §§ 24.2-901, -908, -910 & -1014 apply to issue advocacy groups, or whether the use of the phrase "for the purpose of influencing the outcome of an election" and related phrases limits the application of those statutes to groups that expressly advocate the election or defeat of a particular candidate.

7

The Supreme Court of Virginia replied, in pertinent part, as follows:

> In light of certain concerns expressed in the order of certification and in order to conform to our policy of responding to certified questions in the affirmative or the negative, we will exercise our discretion under Rule 5:42(d) to restate the question as follows: Whether the use of the phrase "for the purpose of influencing the outcome of an election" in Code §§ 24.2-901, -908, -910, and -1014 may be narrowly construed to limit the application of those statutes to groups that expressly advocate the election or defeat of a clearly identified candidate.
>
> Within the statement supporting the determinative nature of the certified question, Rule 5:42(b)(6), the Court of Appeals has expressed grave doubts as to the method used by the district court in arriving at the narrowing construction of these statutes. The district court found that the phrase "for the purpose of influencing the outcome of an election" as used in these statutes "is a term of art whose well-established meaning excludes issue advocacy" based upon the rationale of Buckley.
>
> Citing Boos v. Barry, 485 U.S. 312, 330, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), the Court of Appeals notes that federal courts may not "`adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent.'" Continuing, the Court of Appeals expressed doubts that a narrowing construction of these statutes is readily apparent and that the structure and history of the Act suggest that it applies to issue advocacy groups such as VSHL. The Court of Appeals correctly notes, however, that under the broader rules of statutory construction available in this Court we "may impose a narrowing construction upon these statutes if [we determine] that such a construction would be correct." For the reasons that follow, we conclude that such is the case here.
>
> The rules of statutory construction pertinent to our analysis here are firmly settled. Principal among these rules is

8

that we determine, and adhere to, the intent of the legislature reflected in or by the statute being construed. As an initial and primary proposition, that intent is to be determined by the words in the statute. See Marsh v. City of Richmond, 234 Va. 4, 11, 360 S.E.2d 163, 167 (1987). Where the words used in the statute are not sufficiently explicit, we may determine the intent of the legislature "from the occasion and necessity of the statute being passed [or amended]; from a comparison of its several parts and of other acts in pari materia; and sometimes from extraneous circumstances which may throw light on the subject." Richmond v. Sutherland, 114 Va. 688, 691, 77 S.E. 470, 471 (1913).

Additionally, when, as here, the constitutionality of a statute is challenged, our determination of legislative intent is guided by the recognition that "[a]ll actions of the General Assembly are presumed to be constitutional." Hess v. Snyder Hunt Corp., 240 Va. 49, 52, 392 S.E.2d 817, 820 (1990). Thus, "a statute will be construed in such a manner as to avoid a constitutional question wherever this is possible." Eaton v. Davis, 176 Va. 330, 339, 10 S.E.2d 893, 897 (1940); see also Jacobs v. Meade, 227 Va. 284, 287, 315 S.E.2d 383, 385 (1984). In this context, we will narrowly construe a statute where such a construction is reasonable and avoids a constitutional infirmity.[a] Pedersen v. City of Richmond, 219 Va. 1061, 1065, 254 S.E.2d 95, 98 (1979).

_____

[a]VSHL asserts that without an ambiguity in the language of the statutes in question we may not resort to extrinsic aids of construction. See Wall v. Fairfax County School Board, 252 Va. 156, 159, 475 S.E.2d 803, 805 (1996). This assertion is without merit in the present case. While an ambiguity of language may serve as the basis for rejecting an unconstitutional interpretation of a statute in favor of one that survives constitutional scrutiny, see, e.g., Miller v. Commonwealth, 172 Va. 639, 648, 2 S.E.2d 343, 347 (1939), a finding of ambiguity is not a prerequisite for applying a narrowing construction to preserve a statute's constitutionality. To the contrary, we may construe the plain language of a statute to have limited application if such a construction will tailor the statute to a constitutional fit. Gooding v. Wilson, 405 U.S. 518, 520, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

9

The parties do not dispute, and it is readily apparent, that absent a narrowing construction of the phrase "for the purpose of influencing the outcome of an election" as used by the General Assembly in the statutes in question, these statutes would apply to individuals and groups that engage solely in issue advocacy, and, thus, would be unconstitutionally overbroad. However, a narrowing construction is reasonable because it is consistent with the manner in which the United States Supreme Court construed very similar federal election statutes in <u>Buckley</u>. Moreover, a narrowing construction avoids a constitutional infirmity and is consistent with the legislative intent that we are able to determine from the words used by the General Assembly under the circumstances existing at the time these statutes were enacted or amended.

Each of the statutes in question has either been enacted or amended subsequent to the decision in <u>Buckley</u>. Without question, the General Assembly is presumed to have knowledge of decisions of the United States Supreme Court on constitutional issues that bind actions of the states when enacting statutes that potentially invoke such issues. Accordingly, here the General Assembly is presumed to have had knowledge that the <u>Buckley</u> decision narrowly construed the phrase "for the purpose of influencing" as used in federal election laws to apply only to expenditures used to advocate the election or defeat of a clearly identified candidate and, thus, to exclude groups that engage solely in issue advocacy. Similarly, that presumption of knowledge extends to the more recent <u>McIntyre</u> decision that a state statute cannot constitutionally prohibit anonymous issue advocacy by groups that engage solely in issue advocacy.

Additionally, the General Assembly, when amending a statute, is presumed to have knowledge of the Attorney General's interpretation of that statute in its existing form. <u>See</u> <u>Lee Gardens Arlington Limited Partnership v. Arlington County Board</u>, 250 Va. 534, 540, 463 S.E.2d 646, 649 (1995). In 1995, the Attorney General, in response to an inquiry concerning the constitutionality of Code§ 24.2-1014

10

in light of the McIntyre decision, issued a formal opinion, consistent with prior opinions on related issues, expressly construing the phrase "for the purpose of influencing" as having the same definition as that adopted in Buckley. See 1995 Op. Va. Att'y Gen. 170.

In light of the General Assembly's knowledge of the opinions in Buckley and McIntyre and the Attorney General's opinion adopting a narrowing construction of the broad sweep of the phrase "for the purpose of influencing" at the time the General Assembly enacted or amended the statutes in question, we conclude that the General Assembly intended to limit that phrase and related phrases so as to have no application to individuals or groups that engage solely in issue advocacy and that do not expressly advocate the election or defeat of a clearly identified candidate.

We now consider the effect of this narrowing construction on each of the statutes in question. In doing so we will address only those provisions of the Act pertinent to the present case.

Code § 24.2-901(A) provides definitions for various terms used throughout the Act that control the meaning of specific sections. "Contribution" is defined as "money ... given ... for the purpose of influencing the outcome of an election" and "Expenditure" is defined as "money ... paid ... for the purpose of influencing the outcome of an election." "Independent expenditure" is defined as "an expenditure made by any person or political committee which is not made to ... a candidate" or generally on behalf of a candidate. "Political committee" is defined as a "person or group of persons which receives contributions or makes expenditures for the purpose of influencing the outcome of any election."

We first apply these definitions to Code § 24.2-908, which requires a "political committee which anticipates receiving contributions or making expenditures in excess of $200 in a calendar year" to file a statement of organization

11

with the State Board of Elections. As narrowly construed, a group that engages solely in issue advocacy and does not receive "contributions" or make "expenditures" to expressly advocate the election or defeat of a clearly identified candidate is not a "political committee" as defined in Code § 24.2-901(A), and, consequently, is not included in the mandate of Code § 24.2-908. The same rationale applies to the provisions of Code § 24.2-910(B) that require any group that "is not a political committee and who makes independent expenditures" to report these expenditures to the State Board of Elections. An "independent expenditure" contemplated by this section and as defined in Code § 24.2-901(A) excludes expenditures made solely for issue advocacy.[b] Similarly, Code § 24.2-1014, when narrowly construed in this manner, requires identification of authorship only on writings "made for the purpose of influencing the outcome of an election for public office" and excludes writings that are limited to issue advocacy.

Finally, we consider the terms of Code § 24.2-901(B) that have evoked express concerns by the Court of Appeals in its order of certification and are asserted by VSHL to prohibit the narrowing construction we adopt in this case. For the purpose of applying the filing requirements of Code§ 24.2-908 and the reporting requirements of Code § 24.2-910, Code § 24.2-901(B) expressly excludes from the definition of a "political committee" "an organization holding tax-exempt status under § 501(c)(3) of the United States Internal Revenue Code which, in providing information to voters, does not advocate or endorse the election or defeat of a particular candidate, group of candidates, or the candidates of a particular political party."

Citing the maxim expressio unius est exclusio alterius, that is, the expression of one thing is the exclusion of another, the Court of Appeals questions whether this express

_____

[b]Because we construe Code § 24.2-910(B) to exclude expenditures made solely for issue advocacy, we find no inconsistency in the language of subsections (B)(1) and (B)(2).

12

statement would not result in the definition of a "political committee" necessarily including organizations, such as VSHL, which do not have § 501(c)(3) status, but which nonetheless provide information to voters that "does not advocate or endorse the election or defeat of a particular candidate, group of candidates, or the candidates of a particular political party."[c] Assuming that this is a correct application of this maxim of construction, it does not preclude the application of a narrowing construction to the definition of a "political committee" as contemplated by the General Assembly. Thus, we conclude that even if organizations lacking § 501(c)(3) status, such as VSHL, are subsumed within that definition, under the narrowing construction such groups would be subject to its application elsewhere in the Act only if their activities were to exceed the bounds of issue advocacy.

Accordingly, we hold that the phrase "for the purpose of influencing the outcome of an election," as used in Code §§ 24.2-901, -910, and -1014, as well as its implication for terms used in Code § 24.2-908, may be narrowly construed to limit the application of those statutes to groups that expressly advocate the election or defeat of a clearly identified candidate.

Certified question answered in the affirmative.

As authoritatively construed by the Supreme Court of Virginia, the challenged election laws do not reach groups such as VSHL so long as they engage purely in issue advocacy. The judgment of the district court dismissing the case for lack of standing is, therefore,

AFFIRMED.

_____

[c] VSHL does enjoy tax-exempt status under § 501(c)(4) of the United States Internal Revenue Code.

13