Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell and Koontz, JJ., and Poff, Senior Justice

LEE GARDENS ARLINGTON LIMITED PARTNERSHIP

OPINION BY
v.  Record No. 950305      SENIOR JUSTICE RICHARD H. POFF
                              November 3, 1995

ARLINGTON COUNTY BOARD, ET AL.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N.A. Kendrick, Judge

This is a taxpayer's appeal from a judgment upholding a tax assessment of Sheffield Court Apartments, a large garden apartment complex owned by Lee Gardens Arlington Limited Partnership (Lee Gardens, or the taxpayer).

On January 16, 1992, the property was valued at $33,719,278. The County Board of Arlington County (the County) approved a partial exemption for rehabilitation which reduced the assessed value to $24,539,900. In October, based upon a review of a three-year history of Sheffield Court's report of operating income and expense and a redetermination of its net operating income, the County raised the January assessment to $26,896,600.

In December 1993, Lee Gardens filed an application under Code §§ 58.1-3984 and -3987 to correct the revised assessment and to require a refund of overpayment. Lee Gardens alleged that the 1992 assessment "does not reflect the fair market value of the property [and] . . . is not uniform in its application." The County filed a counterclaim asking the court to increase the assessment to $28,139,800 "based on actual net operating income . . . data . . . not received . . . until after the 1992 assessment was made."

During discovery, Lee Gardens requested disclosure of tax

assessment worksheets used by the County, and the County filed a request for disclosure of certain taxpayer records. The trial court denied the taxpayer's request and, in part, the County's request.

As its final witness at trial, Lee Gardens introduced George Byrne, a private tax consultant, and asked the court to qualify him as an expert in valuation of commercial real estate and review of assessments. Byrne was not licensed as an appraiser, and the court ruled that he was ineligible to testify as an expert witness.

Lee Gardens moved for a continuance. The court denied the motion. The taxpayer moved for nonsuit, and the County moved to strike the taxpayer's evidence. The court denied Lee Gardens' motion and granted the County's motion to strike the evidence. Thereupon, the County nonsuited its counterclaim.

We awarded Lee Gardens an appeal, and we will consider the three questions raised by its assignments of error.

I

First, we address the question whether the trial court erred in denying the taxpayer's discovery request.

The assessment formula employed here is called "capitalization of net operating income". Under that formula, operating expenses are subtracted from operating income, and a capitalization rate is applied to the difference to determine the assessment. As operating income remains constant, the quantum of the assessment will vary according to changes in the operating-expense factor.

In its application of the assessment formula, the County

created a set of "guidelines" of income and expenses. The set includes different guidelines for different types of taxable properties. Thomas Rice, director of the County's department of assessments, testified that the guidelines were used as "the first indication on the value"; that the appraisal staff "examines each of the indications of value produced by those guidelines . . . the experience of the property, its history as reported"; that the staff "has the latitude of adjusting those guideline numbers . . . to reflect the operation of the particular property"; and that, absent such "historical . . . information, the last resort for the county is to rely on the guidelines".

Rice said that the guidelines were not applied to Sheffield Court because its history of operation showed "higher rent" and "lower expenses" than those "indicated by the guidelines", and that no apartment complex with a history of income and expenses like those of Sheffield Court had been assessed by applying the guidelines. As appears from the County's response to a request for admissions, approximately 40 percent of 1992 appraisals of large garden apartment complexes did not apply the guidelines. Rice testified further that the guidelines were not applied when actual expenses were historically higher than the guidelines.

Lee Gardens argues on brief that use of actual expenses lower than guidelines "results in a . . . higher assessment" and that "this method . . . is not uniform in application." Lee Gardens also contends that the County's use of actual expenses higher than the guidelines "is directly relevant to the non-uniformity basis of the taxpayer's claim." Consequently, Lee

Gardens reasons, the trial court committed reversible error when it denied its discovery motion.  That motion requested disclosure of County "tax worksheets for all commercial properties whose expenses exceeded those for the guidelines, and whose actual, or stabilized, expenses were used to compute net operating income."

Under Code § 58.1-3, income and expense information taxpayers provide tax officials is confidential, and any disclosure made without a court order is a Class 2 misdemeanor. Rule 4:1(b)(1) authorizes a trial court to order discovery "regarding any matter, not privileged, which is relevant to the subject matter involved", including any information "reasonably calculated to lead to the discovery of admissible evidence." With respect to the recipient of a discovery order, Rule 4:1(c) empowers the court to "make any order which justice requires to protect a party or person from . . . undue burden or expense, including one . . . that . . . confidential . . . commercial information not be disclosed".

The record shows that the County assesses "approximately 1000 parcels of real estate which are classified as apartment properties", including "some 500 plus . . . apartment complexes" with a total of "some 40,000 apartment units in Arlington County".  Lee Gardens' discovery request embraced not only apartment properties, but "tax worksheets for all commercial properties" in Arlington County.

"All taxes . . . shall be uniform upon the same class of subjects".  Va. Const. art. X, § 1.  The constitutional mandate requires uniformity in the assessment of "properties having like characteristics and qualities, located in the same area."  Smith

v. City of Covington, 205 Va. 104, 108, 135 S.E.2d 220, 223 (1964). Obviously, Lee Gardens' discovery request extends to a "class of subjects" with "characteristics and qualities" unlike apartment complexes and whose histories of income and expense are unlike that experienced by Sheffield Court.

The trial court's order denying Lee Garden's request was based upon the court's finding that the request was "overbroad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence". Citing Rakes v. Fulcher, 210 Va. 542, 546, 172 S.E.2d 751, 755 (1970), Lee Gardens acknowledges on brief that "[t]he granting or denying of a request for discovery is a matter within the trial court's discretion and will be reversed only if the action taken was improvident, and affected substantial rights."

We are of opinion that the trial court's finding is supported by the record and complies with the provisions of Rule 4:1. Consequently, we cannot say that the order denying Lee Gardens' disclosure request was an abuse of the court's discretion, and we will affirm the order denying that request.

II

Next, we consider whether a person unqualified to obtain an appraiser's license can testify as an expert witness on real estate valuation.

On voir dire, Byrne acknowledged that he was a tax consultant under contract with Lee Gardens' attorney; that he was being compensated for his testimony; that he would testify as to the value of Sheffield Court; and that he did not have a Virginia real estate appraiser's license. Asked if he was "qualified to

get a license", Byrne replied, "I don't have the course work." Sustaining the County's objection, the trial court ruled that Byrne "can't be qualified [as an expert witness] without a license."

The question in issue is a matter of first impression in this Court. However, the Attorney General of Virginia has issued an opinion relevant to that issue. Op. Att'y Gen. 211 (1993). Construing the applicable statutes in Chapter 20.1 of Title 54.1 of the Code, the Attorney General concluded that

> it is unlawful [under Code § 54.1-2011(A)] for anyone, including a licensed real estate broker, who does not have a real estate appraiser's license to testify for compensation about the value of real estate in any court proceeding, unless permitted under applicable statutory exceptions.

Id. at 212.

That conclusion was based, the Attorney General explained, upon the "clear language" of § 54.1-2011(A) which provides that "it shall be unlawful to engage in the appraisal of real estate . . . for compensation" and upon the "plain language" of § 54.1-2009 under which, the Attorney General said, "an 'appraisal' includes any opinion or conclusion about the value of interest in real property. An appraisal report may be either oral or written. A broker's testimony in a . . . court proceeding, therefore, clearly falls within this definition of an 'appraisal'."

Lee Gardens contends that the statutory exception defined in Code § 54.1-2010(3) "clearly applies to Mr. Byrne." That subsection of the statute creates an exception for "[a]ny person who, in the ordinary course of business, provides consulting services . . . for a fee". Construing that language, the

Attorney General decided:

> In ordinary usage, "consulting" is defined as "providing professional or expert advice." Webster's Ninth New Collegiate Dictionary 282 (1990). It is not clear that this definition is broad enough to include paid testimony in court, which goes beyond mere advice to the property owner paying for the testimony. In view of the rule of strict construction that applies to exemptions from licensing statutes, therefore, it is my opinion that § 54.1-2010(3) does not except a real estate broker's testimony from the general prohibition in § 54.1-2011(A).

Id. at 213.

In City of Winchester v. American Woodmark Corporation, 250 Va. ___, ___, ___ S.E.2d ___, ___ (1995), we said:

> [W]e have repeatedly held that the General Assembly is presumed to have knowledge of the Attorney General's interpretation of statutes and the General Assembly's failure to make corrective amendments evinces legislative acquiescence in the Attorney General's interpretation. Browning-Ferris, Inc. v. Commonwealth, 225 Va. 157, 161-62, 300 S.E.2d 603, 605-06 (1983); Richard L. Deal and Assoc. v. Commonwealth, 224 Va. 618, 622, 299 S.E.2d 346, 348 (1983); Albemarle County v. Marshall, 215 Va. 756, 762, 214 S.E.2d 146, 150 (1975).

The Attorney General's statutory analysis of the Code Chapter entitled "Real Estate Appraisers" was published August 18, 1993. In 1994, the General Assembly amended Code § 8.01-401.1 entitled "Opinion testimony by experts." Acts 1994, c. 328. Had the legislature intended to make "corrective amendments" to Chapter 20.1 of Title 54.1 enacted in 1990, it could have done so. It did not.

We share the Attorney General's analysis of the applicable statutes, and we will affirm the trial court's ruling that Byrne was ineligible to testify as an expert witness.

                                    III

Finally, we must decide whether the trial court erred in

denying Lee Garden's motion for nonsuit.

"A party shall not be allowed to nonsuit a cause of action, without the consent of the adverse party who has filed a counterclaim, . . . unless the counterclaim . . . can remain pending for independent adjudication by the court."  Code § 8.01-380(C).  Absent the County's consent, the dispositive question is whether the County's counterclaim seeking an increase in the assessment could have remained pending on the docket for independent adjudication after Lee Gardens' claim seeking a decrease in assessment had been nonsuited.

Subsection B of Code § 58.1-3984 affords the commissioner of revenue of a county or city the same right to initiate litigation of a tax assessment as that afforded a taxpayer by subsection A of that statute.  Lee Gardens concedes on brief that, to increase an under assessment, "the county's only recourse . . . is to petition the Circuit Court for an increase in the assessment, pursuant to sec. 58.1-3984(B)".  The County did not pursue that course.  Instead, it chose to assert an under-assessment claim in litigation initiated by the taxpayer's over-assessment claim.

Fair market value was the ultimate issue common to both claims.  The County's counterclaim could not remain pending on the docket for an adjudication <u>independent</u> of an adjudication of the taxpayer's nonsuited claim; an adjudication of one claim would be an adjudication of both.  Accordingly, we will uphold the trial court's ruling that Lee Gardens was not entitled to nonsuit its claim without the County's consent.

IV

Finding no merit in Lee Gardens' assignments of error, we

need not address the County's assignment of cross-error, and we will affirm the judgment of the trial court.

<u>Affirmed</u>.