UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VIRGINIA SOCIETY FOR HUMAN LIFE,
INCORPORATED; ANDREA SEXTON,
<u>Plaintiffs-Appellants,</u>

v.

DONALD S. CALDWELL, Attorney for
the Commonwealth of Virginia for
the City of Roanoke, in his official
capacity and as a representative of
the class of attorneys for the

Commonwealth of Virginia; PAMELA
M. CLARK, in her official capacity
as Chairman of the Virginia Board
of Elections; GEORGE M. HAMPTON,
SR., in his official capacity as Vice-
Chairman of the Virginia Board of
Elections; M. BRUCE MEADOWS, in
his official capacity as Secretary of
the Virginia Board of Elections,
<u>Defendants-Appellees.</u>

No. 98-2565

VIRGINIA SOCIETY FOR HUMAN LIFE,
INCORPORATED; ANDREA SEXTON,
Plaintiffs-Appellants,

v.

DONALD S. CALDWELL, Attorney for
the Commonwealth of Virginia for
the City of Roanoke, in his official
capacity and as a representative of
the class of attorneys for the

No. 99-1110

Commonwealth of Virginia; PAMELA
M. CLARK, in her official capacity
as Chairman of the Virginia Board
of Elections; GEORGE M. HAMPTON,
SR., in his official capacity as Vice-
Chairman of the Virginia Board of
Elections; M. BRUCE MEADOWS, in
his official capacity as Secretary of
the Virginia Board of Elections,
Defendants-Appellees.

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-95-1042-R)

Argued: June 10, 1999

Decided: August 10, 1999

Before MURNAGHAN, WILKINS, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

2

**COUNSEL**

**ARGUED:** James Bopp, Jr., BOPP, COLESON & BOSTROM, Terre Haute, Indiana, for Appellants. Alice Ann Berkebile, Assistant Attorney General, Richmond, Virginia, for Appellees. **ON BRIEF:** James R. Mason, III, BOPP, COLESON & BOSTROM, Terre Haute, Indiana, for Appellants. Mark L. Earley, Attorney General of Virginia, Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants, the Virginia Society for Human Life (VSHL) and Andrea Sexton, appeal the district court's denial of their motions to recover attorneys' fees and expenses under 42 U.S.C.§ 1988. For the reasons that follow, we affirm.

I

VSHL is a non-profit organization whose stated purpose is to educate the general public about pro-life issues. To that end, VSHL periodically prepares voter guides that do not expressly advocate the election or defeat of any candidate but, rather, state the candidate's views on public issues, so called "issue advocacy."

On October 2, 1995, VSHL and Andrea Sexton (hereinafter both parties are simply referred to as VSHL) filed a complaint pursuant to 42 U.S.C. § 1983 against the Commonwealth of Virginia (Virginia) in the United States District Court for the Western District of Virginia. See 28 U.S.C. §§ 1331, 1343(a). In its complaint, VSHL alleged that Virginia Code Annotated §§ 24.2-908, 24.2-910, and 24.2-1014 (Michie 1995) (the 1995 Statutes), which are part of Vir-

3

ginia's Campaign Finance Disclosure Act, see Va. Code Ann. §§ 24.2-900 through 24.2-930, and 24.2-1014 (Michie 1995) (the Act), were unconstitutional on their face and as applied to VSHL.

The first of the 1995 Statutes challenged by VSHL, Virginia Code Annotated § 24.2-908 (Michie 1995), required, with certain exceptions not relevant in this case, any person or political committee that anticipated receiving "contributions" or making "expenditures" over $100 to file a Statement of Organization.[1] Id. Virginia Code Annotated § 24.2-901(A) (Michie 1995) defined (1)"contribution" as any "money and services of any amount, and any other thing of value over $100, given, advanced, promised, loaned, or in any other way provided to a candidate, campaign committee, political committee, inaugural committee, or person for the purpose of influencing the outcome of an election . . ."; (2) "expenditure" as any "money and services of any amount, and any other thing of value over $100, paid, promised, loaned, provided, or in any other way disbursed by any candidate, campaign committee, political committee, inaugural committee, or person for the purpose of influencing the outcome of an election . . ."; (3) "person" as "any individual or corporation, partnership, business, labor organization, membership organization, association, cooperative, or other like entity"; and (4) "political committee" as "any state political party committee, congressional district political party committee, county or city political party committee . . . , organized political party group of elected officials, political action committee, or other committee or group of persons which receives contributions or makes expenditures for the purpose of influencing the outcome of any election. . . ." Id.

The second of the 1995 Statutes challenged by VSHL, Virginia Code Annotated § 24.2-910 (Michie 1995), required any person or political committee required to file a Statement of Organization by Virginia Annotated Code § 24.2-908 (Michie 1995) "to maintain records and file disclosure reports." Va. Code Ann. § 24.2-910(A)

---------------------------------------------------------------

[1] According to Virginia Code Annotated § 24.2-908 (Michie 1995), a Statement of Organization was required to include, inter alia, "the name and address of the person or committee"; "the area, scope, or jurisdiction of the person or committee"; and the name and address of principal officers. See id.

(Michie 1995). Virginia Code Annotated § 24.2-910 (Michie 1995) also required any person or political committee making "independent expenditures" to

maintain records and report . . . all contributions received and expenditures made of:

1. Any funds, in the aggregate, in excess of $500 for a statewide election or $100 for any other election expended for the purpose of influencing the outcome of any election;

2. Any funds in any amount expended to publish or broadcast to the public any material referring to a candidate by name, description, or other reference and (i) advocating his election or defeat, (ii) setting forth his position on any public issue, voting record, or other official acts, or (iii) otherwise designed to influence individuals to cast their votes for or against him or to withhold their votes from him; and

3. Any funds in any amount expended to publish or broadcast to the public any material promoting or opposing a question submitted to the voters in a referendum.

Va. Code Ann. § 24.2-910(B) and (B)(1)-(3) (Michie 1995). Virginia Code Annotated § 24.2-901(A) (Michie 1995) defined "independent expenditure" as "an expenditure made by any person or political committee which is not made to, controlled by, coordinated with, or made upon consultation with a candidate, his campaign committee, or an agent of the candidate or his campaign committee." Id.

The third of the 1995 Statutes challenged by VSHL, Virginia Code Annotated § 24.2-1014 (Michie 1995), required that certain "writing[s]," identify the "person responsible for it." Va. Code Ann. § 24.2-1014(B) (Michie 1995). Virginia Code Annotated § 24.2-1014 (Michie 1995) defined "writing" as "printed or otherwise reproduced

5

statement[s] or advertisement[s]," Va. Code Ann. § 24.2-1014(A), "concerning any potential nominee or candidate, or concerning any question to be submitted to the voters . . .," Va. Code Ann. § 24.2-1014(B). Virginia Code Annotated § 24.2-1014(B) (Michie 1995) required the writing to contain: (1) the name of the candidate if the writing was authorized by a candidate or his campaign committee, see Va. Code Ann. § 24.2-1014(B)(1); (2) the name of the political party committee if the writing was authorized by a political party committee, see Va. Code Ann. § 24.2-1014(B)(2); or (3) if the writing was authorized by any person other than a candidate, his campaign committee, or a political party committee either: (a)"the full name of the committee and a registration number provided by the State Board," if the committee had filed a Statement of Organization under Virginia Code Annotated § 24.2-908, Va. Code Ann. § 24.2-1014(B)(3)(a) (Michie 1995); or (b) "the full name and residence of the individual responsible for the writing," in any other case, Va. Code Ann. § 24.2-1014(B)(3)(b) (Michie 1995).

According to VSHL, it filed suit in 1995 as it prepared to distribute voter guides for the November 1995 Virginia state elections. VSHL alleged that the 1995 Statutes were unconstitutional because statutes similar to the 1995 Statutes had been held to constitute unconstitutional prior restraints on issue advocacy groups. See McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995); Buckley v. Valeo, 424 U.S. 1, 78-80 (1976) (per curiam). VSHL sought a declaration from the district court that, if the 1995 Statutes applied to issue advocacy groups such as VSHL, the 1995 Statutes facially violated the First Amendment to the United States Constitution under the United States Supreme Court's decisions in Buckley and McIntyre. See Buckley, 424 U.S. at 78-80 (interpreting federal election laws that require the disclosure of expenditures to apply only to expenditures used expressly to advocate the election or defeat of a clearly identified candidate, thereby avoiding the First Amendment problems that would arise from a reporting requirement that applied to funds expended on issue advocacy); McIntyre, 514 U.S. at 357 (holding that an Ohio statute prohibiting anonymous issue advocacy was an unconstitutional abridgment of speech).

On the same day that VSHL filed its complaint, it filed a motion for a preliminary injunction seeking to enjoin Virginia from enforcing

6

the 1995 Statutes. In response, Virginia contended that the 1995 Statutes did not apply to issue advocacy groups such as VSHL and that Virginia had no intention of attempting to enforce the 1995 Statutes against VSHL and similar issue advocacy groups. Regardless, on October 12, 1995, the district court, determining that substantial questions existed as to whether the 1995 Statutes applied to issue advocacy groups such as VSHL, entered a temporary injunction enjoining Virginia from enforcing, against VSHL, Virginia Code Annotated §§ 24.2-908, 24.2-910, and 24.2-1014(B)(3)(b). See Fed. R. Civ. P. 65(b). The temporary injunction was converted into a preliminary injunction on October 21, 1995. See Fed. R. Civ. P. 65(a). Because the district court believed that the Supreme Court of Virginia could construe Virginia Code Annotated §§ 24.2-908 and 24.2-910 narrowly, the district court certified to the Supreme Court of Virginia the question of whether Virginia Code Annotated #8E8E # 24.2-908 and 24.2-910 were susceptible to a narrow construction that would preserve their constitutionality. See Virginia Soc'y for Human Life, Inc. v. Caldwell, 906 F. Supp. 1071, 1074-75 (W.D. Va. 1995). However, the Supreme Court of Virginia declined to answer the certified question submitted by the district court. See Virginia Soc'y for Human Life, Inc. v. Caldwell, No. 95-2122 (Va. Jan. 18, 1996).

In 1996, approximately two months after the Supreme Court of Virginia declined to answer the certified question submitted by the district court, and before the district court reached a final determination on VSHL's § 1983 challenge to the 1995 Statutes, the Virginia General Assembly amended the 1995 Statutes. See Va. Code Ann. §§ 24.2-908, 24.2-910, 24.2-1014 (Michie 1997) (hereinafter referred to as the Amended Statutes or as the 1996 Amendments to the 1995 Statutes). The Amended Statutes made several changes to Virginia Code Annotated §§ 24.2-908, 24.2-910, and 24.2-1014 (Michie 1995).

First, Virginia Code Annotated § 24.2-908 (Michie 1995) was amended to require only political committees (instead of persons and political committees) that made expenditures over $200 in a calendar year (instead of $100) to file a Statement of Organization.**2** See Va.

_____

**2** The requirements of the Statement of Organization set forth in Virginia Code Annotated § 24.2-908 (Michie 1995) were amended to eliminate any reference to "person." See Va. Code Ann. § 24.2-908 (Michie 1997).

7

Code Ann. § 24.2-908 (Michie 1997). Virginia Code Annotated § 24.2-908 (Michie 1995) was further amended to eliminate the exceptions not relevant to this appeal. See Va. Code Ann. § 24.2-908 (Michie 1997).

Second, Virginia Code Annotated § 24.2-910(A) was amended to require only political committees (instead of persons or political committees) required to file a Statement of Organization to maintain records and file disclosure reports. Virginia Code Annotated § 24.2-910(B) (Michie 1995) was amended to require any person who was not a political committee (instead of any person or political committee) making "independent expenditures, in the aggregate, in excess of $500 for a statewide election or $200 [(instead of $100)] for any other election," to "maintain records and report . .. all independent expenditures" (instead of contributions received and expenditures made), including those expended "for the purpose of influencing the outcome of any election." Va. Code Ann. § 24.2-910(B) (Michie 1997). In addition, the 1996 Amendments to the 1995 Statutes eliminated Virginia Code Annotated § 24.2-910(B)(3). See Va. Code Ann. § 24.2-910(B) (Michie 1997).

Third, the Amended Statutes made two notable changes to Virginia Code Annotated § 24.2-1014 (Michie 1995) that limited the scope of "writing[s]" required to identify the"person responsible for it." Va. Code Ann. § 24.2-1014(B) (Michie 1995). Specifically, Virginia Code Annotated § 24.2-1014 (Michie 1997) limited the definition of a "writing" required to identify the author to"printed or otherwise reproduced statement[s] or advertisement[s] made for the purpose of influencing the outcome of an election," (instead of printed or otherwise reproduced statements or advertisements), Va. Code Ann. § 24.2-1014(A) (Michie 1997), and Virginia Code Annotated § 24.2-1014(B) (Michie 1997) further limited the scope of a"writing" required to identify the author to those writings"concerning any clearly identified candidate" (instead of concerning any potential nominee or candidate or concerning questions submitted to voters).

On July 12, 1996, VSHL filed an amended complaint under 42 U.S.C. § 1983 challenging the Amended Statutes. Notably, VSHL's § 1983 challenge to the Amended Statutes was identical to its § 1983 challenge to the 1995 Statutes. VSHL alleged that the Amended Stat-

utes were unconstitutional because statutes similar to the Amended Statutes had been held to constitute unconstitutional prior restraints on issue advocacy groups. VSHL sought a declaration from the district court that, if the Amended Statutes applied to issue advocacy groups such as VSHL, the Amended Statutes facially violated the First Amendment to the United States Constitution under the Supreme Court's decisions in Buckley and McIntyre. VSHL also sought a preliminary injunction against Virginia's enforcement of the Amended Statutes as applied to VSHL.**3**

On February 19, 1997, the district court, after choosing to narrowly construe the Amended Statutes to save their constitutionality under Buckley, 424 U.S. at 78-80, determined that the Amended Statutes were limited to express candidate advocacy and, therefore, did not apply to issue advocacy. Accordingly, the district court held that VSHL, an issue advocacy group, was without standing to challenge the Amended Statutes because the Amended Statutes did not apply to it. Therefore, the district court dismissed VSHL's amended § 1983 complaint for lack of standing.

On March 3, 1997, VSHL appealed the district court's dismissal of its amended § 1983 complaint for lack of standing to this court. This court certified to the Supreme Court of Virginia the question of whether the Amended Statutes were susceptible to a narrow construction that removed groups engaged solely in issue advocacy from reach. Virginia Soc'y for Human Life, Inc. v. Caldwell, 152 F.3d 268, 272 (4th Cir. 1998). On June 5, 1998, the Supreme Court of Virginia construed the provisions as not applying to issue advocacy. See Virginia Soc'y for Human Life, Inc. v. Caldwell, 500 S.E.2d 814, 818 (Va. 1998).

Specifically, the Supreme Court of Virginia narrowly construed the phrase "for the purpose of influencing the outcome of an election," as used in the Virginia Code Annotated §§ 24.2-901, 24.2-908, 24.2-910, and 24.2-1014 (Michie 1997), as not applying to individuals or

_____

**3** At this point, the preliminary injunction entered by the district court enjoining Virginia from enforcing the 1995 Statutes became moot inasmuch as VSHL's § 1983 challenge shifted from the 1995 Statutes to the Amended Statutes.

groups that engage solely in issue advocacy. Caldwell, 500 S.E.2d at 816-18. The Supreme Court stated:

> The parties do not dispute, and it is readily apparent, that absent a narrowing construction of the phrase "for the purpose of influencing the outcome of an election" as used by the General Assembly in the statutes in question, these statutes would apply to individuals and groups that engage solely in issue advocacy, and, thus, would be unconstitutionally overbroad. However, a narrowing construction is reasonable because it is consistent with the manner in which the United States Supreme Court construed very similar federal election statutes in Buckley. Moreover, a narrowing construction avoids a constitutional infirmity and is consistent with the legislative intent that we are able to determine from the words used by the General Assembly under the circumstances existing at the time these statutes were enacted or amended.
>
> Each of the statutes in question has either been enacted or amended subsequent to the decision in Buckley . Without question, the General Assembly is presumed to have knowledge of decisions of the United States Supreme Court on constitutional issues that bind actions of the states when enacting statutes that potentially invoke such issues. Accordingly, here the General Assembly is presumed to have had knowledge that the Buckley decision narrowly construed the phrase "for the purpose of influencing" as used in federal election laws to apply only to expenditures used to advocate the election or defeat of a clearly identified candidate and, thus, to exclude groups that engage solely in issue advocacy. Similarly, that presumption of knowledge extends to the more recent McIntyre decision that a state statute cannot constitutionally prohibit anonymous issue advocacy by groups that engage solely in issue advocacy.
>
> Additionally, the General Assembly, when amending a statute, is presumed to have knowledge of the Attorney General's interpretation of that statute in its existing form. See Lee Gardens Arlington Limited Partnership v. Arlington County

10

Board, 250 Va. 534, 540, 463 S.E.2d 646, 649 (1995). In 1995, the Attorney General, in response to an inquiry concerning the constitutionality of Code § 24.2-1014 in light of the McIntyre decision, issued a formal opinion, consistent with prior opinions on related issues, expressly construing the phrase "for the purpose of influencing" as having the same definition as that adopted in Buckley. See 1995 Op. Va. Att'y Gen. 170.

In light of the General Assembly's knowledge of the opinions in Buckley and McIntyre and the Attorney General's opinion adopting a narrowing construction of the broad sweep of the phrase "for the purpose of influencing" at the time the General Assembly enacted or amended the statutes in question, we conclude that the General Assembly intended to limit that phrase and related phrases so as to have no application to individuals or groups that engage solely in issue advocacy and that do not expressly advocate the election or defeat of a clearly identified candidate.

Caldwell, 500 S.E.2d at 817.

The Supreme Court of Virginia then considered the effect of this narrowing construction on each of the statutes in question. See id. at 817-18. First, the Supreme Court of Virginia noted the various terms used throughout the Act that contained the phrase "for the purpose of influencing the outcome of an election":

"Contribution" is defined as "money . . . given . . . for the purpose of influencing the outcome of an election" and "Expenditure is defined as "money" . . . paid . .. for the purpose of influencing the outcome of an election." "Independent expenditure" is defined as "an expenditure made by any person or political committee which is not made to . . . a candidate" or generally on behalf of a candidate. "Political committee" is defined as a "person or group of persons which receives contributions or makes expenditures for the purpose of influencing the outcome of an election."

Caldwell, 500 S.E.2d at 817-18 (quoting Va. Code Ann. § 24.2-901(A) (Michie 1997)). The Supreme Court of Virginia then applied

11

these definitions to Virginia Code Annotated §§ 24.2-908, 24.2-910, and 24.2-1014 (Michie 1997):

> As narrowly construed, a group that engages solely in issue advocacy and does not receive "contributions" or make "expenditures" to expressly advocate the election or defeat of a clearly identified candidate is not a "political committee" as defined in Code § 24.2-901(A), and, consequently, is not included in the mandate of Code § 24.2-908. The same rationale applies to the provisions of Code § 24.2-910(B) that require any group that "is not a political committee and who makes independent expenditures" to report these expenditures to the State Board of Elections. An "independent expenditure" contemplated by this section and as defined in Code § 24.2-901(A) excludes expenditures made solely for issue advocacy. Similarly, Code § 24.2-1014, when narrowly construed in this manner, requires identification of authorship only on writings "made for the purpose of influencing the outcome of an election for public office" and excludes writings that are limited to issue advocacy.

Caldwell, 500 S.E.2d at 818.

Due to the answer received from the Supreme Court of Virginia, this court affirmed the district court's dismissal of VSHL's amended § 1983 complaint for lack of standing. See Caldwell, 152 F.3d at 274.

Following the resolution of the appeal, VSHL filed motions in both this court and the district court seeking to recover its attorneys' fees and expenses pursuant to 42 U.S.C. § 1988. This court referred VSHL's request for appellate attorneys' fees to the district court for its consideration in the first instance. In its motions for both trial and appellate attorneys' fees, VSHL argued that it was a "prevailing party" under 42 U.S.C. § 1988 because: (1) the preliminary injunction against the enforcement of the 1995 Statutes was a final determination on the merits of its § 1983 challenge to the 1995 Statutes, and, thus, at a minimum, entitled it to attorneys' fees on its § 1983 challenge to the 1995 Statutes; (2) the Supreme Court of Virginia's narrow construction of the Amended Statutes as not applying to issue advocacy groups was comparable to a final determination of its § 1983 chal-

12

lenge to the Amended Statutes; and (3) its litigation against Virginia was the "catalyst" that prompted the Virginia General Assembly's 1996 Amendments to the 1995 Statutes and the Supreme Court of Virginia's narrow construction of the Amended Statutes as not applying to issue advocacy groups.

On September 24, 1998, the district court denied VSHL's request for attorneys' fees and expenses associated with the proceedings in the district court because VSHL was not a prevailing party under 42 U.S.C. § 1988. Specifically, the district court rejected VSHL's argument that it was a prevailing party in its § 1983 challenge to the 1995 Statutes because the issuance of the preliminary injunction against enforcement of the 1995 Statutes was a final determination on the merits of its § 1983 challenge to the 1995 Statutes. The district court determined that the preliminary injunction "was not a `final disposition'" of VSHL's § 1983 challenge to the 1995 Statutes; rather, "[t]he final disposition in the case was a dismissal for lack of standing." (J.A. 236). Next, the district court determined that the Virginia Supreme Court's narrow construction of the Amended Statutes as not applying to issue advocacy groups did not provide VSHL with a final enforceable judgment against Virginia, and, thus, VSHL was not a prevailing party under 42 U.S.C. § 1988. Finally, the district court determined that VSHL could not obtain prevailing party status under 42 U.S.C. § 1988 by relying on a theory that its litigation against Virginia was the catalyst for the Virginia General Assembly's 1996 Amendments to the 1995 Statutes and the Virginia Supreme Court's narrow construction of the Amended Statutes as not applying to issue advocacy groups. The district court concluded that reliance on a "catalyst theory" was foreclosed by the Fourth Circuit's decision in S-1 and S-2 v. State Board of Education, 21 F.3d 49 (4th Cir. 1994) (en banc) (per curiam) (vacating S-1 and S-2 v. State Board of Education, 6 F.3d 160 (4th Cir. 1993), and adopting Judge Wilkinson's dissenting opinion reported at 6 F.3d at 168-72), which rejected such a theory as a basis for obtaining prevailing party status under 42 U.S.C. § 1988. See S-1 and S-2, 21 F.3d at 51.

On December 21, 1998, the district court denied VSHL's request for attorneys' fees and expenses associated with the appellate proceedings before this court. VSHL noticed a timely appeal from both decisions of the district court. The two decisions of the district court

13

were consolidated for appeal by an order of this court dated January 25, 1999.

On appeal, VSHL contends that it was a prevailing party under 42 U.S.C. § 1988 because: (1) the preliminary injunction against the enforcement of the 1995 Statutes was a final determination on the merits of its § 1983 challenge to the 1995 Statutes, and, thus, at a minimum, entitled it to attorneys' fees on its § 1983 challenge to the 1995 Statutes; (2) the Supreme Court of Virginia's narrow construction of the Amended Statutes as not applying to issue advocacy groups was comparable to a final determination of its § 1983 challenge to the Amended Statutes; and (3) its litigation against Virginia was the catalyst that prompted the Virginia General Assembly's 1996 Amendments to the 1995 Statutes and the Supreme Court of Virginia's narrow construction of the Amended Statutes as not applying to issue advocacy groups.

II

Section 1988 of Title 42 of the United States Code provides, in relevant part: "In any action or proceeding to enforce a provision of . . . [§] 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). If the district court denies a prevailing party attorneys' fees, we review such a denial for an abuse of discretion. See McDonnell v. Miller Oil Co., 134 F.3d 638, 640 (4th Cir. 1998). However, if the district court determines, as a matter of law, that a party is not a prevailing party under 42 U.S.C. § 1988, we review the district court's determination de novo. See Shaw v. Hunt, 154 F.3d 161, 164 (4th Cir. 1998). Because the district court in this case determined, as a matter of law, that VSHL was not a prevailing party under 42 U.S.C.§ 1988, we review the district court's determination de novo. See id.

The Supreme Court held in Farrar v. Hobby, 506 U.S. 103 (1992), that a plaintiff can obtain prevailing party status under 42 U.S.C. § 1988 only when the plaintiff obtains "an enforceable judgment . . . or comparable relief through a consent decree or settlement." Farrar, 506 U.S. at 111. The Supreme Court explained, "Only under these circumstances can civil rights litigation effect `the material alteration of

14

the legal relationship of the parties' and thereby transform the plaintiff into a prevailing party." Id. (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)).

Sitting en banc, a majority of this court in S-1 and S-2 examined Farrar and concluded that in order for a plaintiff to obtain prevailing party status under 42 U.S.C. § 1988, there would have to be a "material alteration of the legal relationship between the parties" as manifested by whether the plaintiff was entitled to enforce "a judgment, consent degree, or settlement against the defendant." S-1 and S-2, 6 F.3d at 168-69 (Wilkinson, J., dissenting) (adopted by the majority in S-1 and S-2, 21 F.3d at 51).

Obviously, if a plaintiff's case is dismissed, for example, for lack of standing, before a final enforceable judgment, settlement, or consent decree, the plaintiff will not be able to obtain prevailing party status under 42 U.S.C. § 1988. See Shaw , 154 F.3d at 166 (stating that "a plaintiff without standing will not be able to recover fees . . . because the possession of Article III standing is interwoven into the very concept of plaintiff status") (emphasis in original). Thus, if a plaintiff is granted a preliminary injunction against the defendant's alleged unlawful conduct, but the plaintiff's case is ultimately dismissed without a decision on the merits, the grant of the preliminary injunction is not in and of itself relief entitling a plaintiff to prevailing party status under 42 U.S.C. § 1988. See Smith v. University of N.C., 632 F.2d 316, 346-52 (4th Cir. 1980) (holding that a party who obtains a preliminary injunction preserving the status quo based upon the probability of success on the merits but ultimately fails on the merits cannot obtain prevailing party status under 42 U.S.C. § 1988). However, a plaintiff that has received a preliminary injunction against the defendant's alleged unlawful conduct may obtain prevailing party status under 42 U.S.C. § 1988 without obtaining a favorable final judgment following a full trial on the merits of its claim. See S-1 and S-2, 6 F.3d at 172 n.3 (adopted by the majority in S-1 and S-2 v. State Bd. of Educ., 21 F.3d 49 (4th Cir. 1994)). "[W]hen a plaintiff is successful in obtaining a preliminary injunction based on its probability of success, the defendant's voluntary cessation of unlawful conduct need not deprive the plaintiff of prevailing status." Id. (emphasis in original) (hereinafter referred to as footnote three of S-1 and S-2). Thus, a plaintiff may obtain prevailing party status under 42 U.S.C.

15

§ 1988 without obtaining a favorable final judgment in its challenge to a defendant's alleged unlawful conduct if the plaintiff shows that it obtained a preliminary injunction based upon the probability of success on the merits and, further, that the defendant voluntarily ceased unlawful conduct in response to the plaintiff's litigation against the defendant. See id. The plaintiff must show that it was unable to achieve a final determination on the merits of its challenge to the defendant's alleged unlawful conduct because the defendant voluntarily ceased unlawful conduct in response to the plaintiff's litigation against the defendant, thereby depriving the plaintiff of its opportunity to obtain a final determination on the merits. See id. This view is consistent with other circuits' viewpoints on this issue. See, e.g., National Black Police Ass'n v. District of Columbia Bd. of Elections & Ethics, 168 F.3d 525, 527-29 (D.C. Cir. 1999) (allowing plaintiffs, who had obtained an injunction pursuant to their 42 U.S.C. § 1983 challenge to defendant's alleged unlawful conduct, to obtain prevailing party status under 42 U.S.C. § 1988 even though subsequent legislation mooted plaintiffs' § 1983 challenge because the injunction altered the legal relationship between the parties); Haley v. Pataki, 106 F.3d 478, 483-84 (2d Cir. 1997) (allowing plaintiffs, who had obtained a preliminary injunction pursuant to their 42 U.S.C. § 1983 challenge to defendant's alleged unlawful conduct, to obtain prevailing party status even though defendant's subsequent compliance with the injunction and passage of legislation mooted plaintiffs' § 1983 challenge because the injunction was a determination on the merits); see also Maloney v. Marietta, 822 F.2d 1023, 1024 (11th Cir. 1987) (preliminary injunction in voting rights case vacated as moot following voluntary compliance by defendants; fees properly awarded to plaintiffs as prevailing parties); Taylor v. Ft. Lauderdale, 810 F.2d 1551, 1558 (11th Cir. 1987) (same, where City passed mooting ordinance following entry of preliminary injunction); Williams v. Alioto, 625 F.2d 845, 847-48 (9th Cir. 1980) (same, where police voluntarily ceased enjoined conduct while preliminary injunction on appeal).

A

VSHL contends that it was a prevailing party under 42 U.S.C. § 1988 because the preliminary injunction against the enforcement of the 1995 Statutes was a final determination on the merits of its § 1983 challenge to the 1995 Statutes, and thus, at a minimum, entitled it to

16

attorneys' fees on its § 1983 challenge to the 1995 Statutes. We disagree.

As noted above, a plaintiff that has received a preliminary injunction against the defendant's alleged unlawful conduct may obtain prevailing party status under 42 U.S.C. § 1988 without obtaining a favorable final judgment following a full trial on the merits of its claim. See S-1 and S-2, 6 F.3d at 172 n.3 (adopted by the majority in S-1 and S-2 v. State Bd. of Educ., 21 F.3d 49 (4th Cir. 1994)). To obtain prevailing party status, the plaintiff must show that it was unable to achieve a final determination on the merits of its challenge to the defendant's alleged unlawful conduct because the defendant voluntarily ceased unlawful conduct in response to the plaintiff's litigation against the defendant, thereby depriving the plaintiff of its opportunity to obtain a final determination on the merits. See id. Unfortunately for VSHL, it has failed to show that the 1996 Amendments to the 1995 Statutes were a voluntary cessation of unlawful conduct made in response to VSHL's litigation against Virginia.

First, Virginia Code Annotated § 24.2-908 (Michie 1995) was amended to require only political committees (instead of persons and political committees) that made expenditures over $200 in a calendar year (instead of $100) to file a Statement of Organization. However, the fact that Virginia Code Annotated § 24.2-908 (Michie 1995) was amended to change the expenditure amount to $200 in a calendar year and to eliminate persons making such expenditures did not amount to a voluntary cessation of unlawful conduct in response to VSHL's litigation against Virginia. The Supreme Court of Virginia concluded that the Virginia General Assembly amended Virginia Code Annotated § 24.2-908 (Michie 1995) in response to Buckley and McIntyre. Further, VSHL has offered insufficient evidence that such changes were made in response to its litigation.

Second, Virginia Code Annotated § 24.2-910(A) was amended to require only political committees (instead of persons or political committees) required to file a Statement of Organization to maintain records and file disclosure reports. Virginia Code Annotated § 24.2-910(B) (Michie 1995) was amended to require any person who was not a political committee (instead of any person or political committee) making "independent expenditures, in the aggregate, in excess of

17

$500 for a statewide election or $200 [(instead of $100)] for any other election," to "maintain records and report . .. all independent expenditures" (instead of contributions received and expenditures made), including those expended "for the purpose of influencing the outcome of any election." In addition, the 1996 Amendments to the 1995 Statutes eliminated Virginia Code Annotated § 24.2-910(B)(3). The fact that Virginia Code Annotated § 24.2-910(A) was amended to require only political committees required to file a Statement of Organization to maintain records and file disclosure reports, and the fact that Virginia Code Annotated § 24.2-910(B) (Michie 1995) was amended to cover only persons who were not political committees and only expenditures over $200 and was amended to eliminate Virginia Code Annotated § 24.2-910(B)(3), did not amount to a voluntary cessation of unlawful conduct in response to VSHL's litigation against Virginia. The Supreme Court of Virginia concluded that the Virginia General Assembly amended Virginia Code Annotated§ 24.2-910 (Michie 1995) in response to Buckley and McIntyre. Further, VSHL has offered insufficient evidence that such changes were made in response to its litigation.**4**

With regard to Virginia Code Annotated § 24.2-1014 (Michie 1995), the Amended Statutes made two notable changes that limited the scope of "writing[s]" required to identify the "person responsible for it." Va. Code Ann. § 24.2-1014(B) (Michie 1995). Specifically, Virginia Code Annotated § 24.2-1014 (Michie 1997) limited the definition of a "writing" required to identify the author to "printed or otherwise reproduced statements or advertisements made for the purpose

_____

**4** Furthermore, there is nothing to suggest that the Supreme Court of Virginia would have construed Virginia Code Annotated §§ 24.2-908 and 24.2-910 (Michie 1995) in a manner inconsistent with its interpretation of Virginia Code Annotated §§ 24.2-908 and 24.2-910 (Michie 1997). The Supreme Court of Virginia construed the phrase "for the purpose of influencing the outcome of any election," used in Virginia Code Annotated §§ 24.2-908 and 24.2-910(B) (Michie 1997), as not applying to issue advocacy. See Caldwell, 500 S.E.2d at 816-18. Virginia Code Annotated §§ 24.2-908 and 24.2-910 (Michie 1995) were also tied to the phrase "for the purpose of influencing the outcome of any election." Thus, VSHL has also failed to show that Virginia Code Annotated §§ 24.2-908 and 24.2-910 (Michie 1995) were unlawful.

18

of influencing the outcome of an election," (instead of printed or otherwise reproduced statements or advertisements), Va. Code Ann. § 24.2-1014(A) (Michie 1997), and Virginia Code Annotated § 24.2-1014(B) (Michie 1997) further limited the scope of a "writing" required to identify the author to those writings "concerning any clearly identified candidate" (instead of concerning any potential nominee or candidate or concerning questions submitted to voters). However, VSHL has not proven that this change was made in response to VSHL's litigation against Virginia.

Virginia Code Annotated § 24.2-1014 (Michie 1995) was enacted prior to the Supreme Court's decision in McIntyre, which was decided on April 19, 1995. On July 13, 1995, the Attorney General of Virginia, "in response to an inquiry concerning the constitutionality of . . . § 24.2-1014 in light of the McIntyre decision . . .," Caldwell, 152 F.3d at 273 (quoting Caldwell, 500 S.E.2d at 817), issued a formal opinion stating that "in light of McIntyre , the provision in § 24.2-1014[ ], requiring the identification of all persons responsible for writings `concerning any question to be submitted to the voters' would not survive constitutional challenge." 1995 Op. Va. Att'y Gen. 172 (quoting Va. Code Ann. § 24.2-1014 (Michie 1995)). Consequently, in 1996, the Virginia General Assembly amended Virginia Code Annotated § 24.2-1014 (Michie 1995) to comply with McIntyre. As the Supreme Court of Virginia explained:

> Without question, the General Assembly is presumed to have knowledge of decisions of the United States Supreme Court on constitutional issues that bind actions of the states when enacting statutes that potentially invoke such issues. Accordingly, here the . . . presumption of knowledge extends to the more recent McIntyre decision that a state statute cannot constitutionally prohibit anonymous issue advocacy by groups that engage solely in issue advocacy.

> Additionally, the General Assembly, when amending a statute, is presumed to have knowledge of the Attorney General's interpretation of that statute in its existing form. See Lee Gardens Arlington Limited Partnership v. Arlington County Board, 250 Va. 534, 540, 463 S.E.2d 646, 649 (1995). . . .

19

In light of the General Assembly's knowledge of the opinions in Buckley and McIntyre and the Attorney General's opinion adopting a narrowing construction of the broad sweep of the phrase "for the purpose of influencing" at the time the General Assembly enacted or amended the statutes in question, we conclude that the General Assembly intended to limit that phrase and related phrases so as to have no application to individuals or groups that engage solely in issue advocacy and that do not expressly advocate the election or defeat of a clearly identified candidate.

Caldwell, 500 S.E.2d at 817. Thus, it is clear that the 1996 Amendments to the 1995 Statutes were made in response to McIntyre and the Virginia Attorney General's opinion interpreting Virginia Code Annotated § 24-2.1014 (Michie 1995) in light of McIntyre. Furthermore, VSHL has not brought forth sufficient evidence that proves that the 1996 Amendments to Virginia Code Annotated § 24.2-1014 were made in response to its litigation against Virginia.

In sum, given the fact that VSHL has not demonstrated that the Virginia General Assembly's 1996 Amendments to the 1995 Statutes constituted a voluntary cessation of unlawful conduct made in response to its litigation against Virginia, VSHL is not entitled to prevailing party status under 42 U.S.C. § 1988, even though VSHL obtained a preliminary injunction against the enforcement of the 1995 Statutes.

B

VSHL also contends that it was entitled to prevailing party status under 42 U.S.C. § 1988 because the Supreme Court of Virginia's narrow construction of the Amended Statutes as not applying to issue advocacy groups, in response to this court's certification of such question, was comparable to a final judgment on the merits of its claim. We disagree.

The Supreme Court has never intimated that we are to look to a state supreme court's construction of a statute to determine whether a plaintiff obtained prevailing party status under 42 U.S.C. § 1988 in its § 1983 challenge. In fact, in Farrar , the Supreme Court stated that

20

"a judicial pronouncement . . . unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party." Farrar, 506 U.S. at 112. The Supreme Court in Farrar further stated, "Of itself, `the moral satisfaction[that] results from any favorable statement of law' cannot bestow prevailing party status." Id. (quoting Hewitt v. Helms, 482 U.S. 755, 762 (1987)).

Thus, the question is not whether the Supreme Court of Virginia's construction of the Amended Statutes entitled VSHL to prevailing party status, but whether VSHL prevailed in its § 1983 action. See Farrar, 506 U.S. at 112. Clearly, VSHL did not. As noted previously, VSHL's § 1983 action was dismissed for lack of standing.

C

Finally, VSHL contends that it was a prevailing party under 42 U.S.C. § 1988, pursuant to a catalyst theory. Under VSHL's catalyst theory, it claims that it obtained prevailing party status under 42 U.S.C. § 1988 because its litigation against Virginia was the catalyst for post-litigation changes in Virginia's conduct, namely: (1) the Virginia General Assembly's 1996 Amendments to the 1995 Statutes; and (2) the Supreme Court of Virginia's narrow construction of the Amended Statutes as not applying to issue advocacy groups such as VSHL.

On appeal, VSHL concedes, as it must, that our en banc decision in S-1 and S-2 forecloses reliance on a catalyst theory to establish prevailing party status under 42 U.S.C. § 1988. In S-1 and S-2, sitting en banc, a majority of this court interpreted Farrar to preclude reliance on a catalyst theory for obtaining prevailing party status under 42 U.S.C. § 1988. See S-1 and S-2, 21 F.3d at 51. The court concluded, "There is no way . . . that Farrar and a broad `catalyst theory' of attorneys' fees recovery can be reconciled." S-1 and S-2, 6 F.3d at 168-69 (Wilkinson, J., dissenting) (adopted by the majority in S-1 and S-2, 21 F.3d at 51). Rather, the court concluded that in order for a plaintiff to obtain prevailing party status, entitling it to recover attorneys' fees under 42 U.S.C. § 1988, there would have to be a "material alteration of the legal relationship between the parties" as manifested by whether the plaintiff was entitled to enforce"a judgment, consent degree, or settlement against the defendant." S-1 and S-2, 6 F.3d at

21

168-69 (Wilkinson, J., dissenting) (adopted by the majority in <u>S-1 and S-2</u>, 21 F.3d at 51). This court's decision in <u>S-1 and S-2</u> forecloses VSHL from relying on a catalyst theory to obtain prevailing party status under 42 U.S.C. § 1988. <u>See S-1 and S-2</u>, 21 F.3d at 51. We cannot overrule this court's <u>en banc</u> decision in <u>S-1 and S-2</u>. <u>See</u> <u>Etheridge v. Norfolk & Western Ry. Co.</u>, 9 F.3d 1087, 1090 (4th Cir. 1993). Accordingly, VSHL's argument that it was a prevailing party under 42 U.S.C. § 1983, pursuant to a catalyst theory is without merit.

III

Because VSHL's § 1983 claim was dismissed for lack of standing without VSHL obtaining a final enforceable judgment in its § 1983 challenge to the Amended Statutes, and because VSHL has not demonstrated that Virginia voluntarily ceased unlawful conduct in response to its § 1983 challenge to the 1995 Statutes, VSHL was not a prevailing party under 42 U.S.C. § 1988. Accordingly, we affirm the district court's denial of VSHL's motions to recover attorneys' fees and expenses under 42 U.S.C. § 1988.

<u>AFFIRMED</u>

22