# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Lesner Pointe
Condominium
Association, Inc., et al.

v.

Harbour Point
Building Corp. et al.

v.

Bishop Wall
Systems et al.

Case No. (Law) CL00-1893

BY JUDGE A. BONWILL SHOCKLEY

610

April 10, 2002

The Board of Directors of the Lesner Pointe Condominiums and the Lesner Pointe Condominium Association ("Lesner Pointe") and Defendant Dryvit Systems, Inc. ("Dryvit") are before this Court on Dryvit's Demurrers, Special Pleas, and Motion Craving Oyer in response to Lesner Pointe's Amended Motion for Judgment. Dryvit demurs to Count X (Breach of Implied Warranty of Merchantability), Count XI (Breach of Implied Warranty of Fitness for a Particular Purpose), Count XII (Civil Conspiracy), Count XIII (Actual Fraud), Count XIV (Constructive Fraud), Count XVI (Violation of § 18.2-216, the Deceptive Advertising Statute), Count XVII (Negligence), and Count XVIII (Negligent Misrepresentation). In addition to demurring to these counts, Dryvit makes a Special Plea in Bar as to the statute of limitations for all of the alleged causes of action except negligence and negligent misrepresentation. Both parties have submitted briefs and appeared before this Court on February 21, 2002, to argue these demurrers and special pleas. In the Brief in Opposition, Plaintiff requests a nonsuit as to the implied warranty claims which are pleaded as Counts X and XI. As a result, this Court does not need to address these counts at this time. This Court also does not need to address Dryvit's Motion Craving Oyer as the Plaintiff has produced numerous documents in response to be incorporated into the Amended Motion for Judgment. Although this Court does not need to decide the merits of the Motion, this Court may consider these documents as exhibits to the Amended Motion for Judgment. *Ward's Equip., Inc. v. New Holland North Am., Inc.*, 254 Va. 379, 382 (1997); *see also Stoney v. Franklin*, 54 Va. Cir. 591 (2001).

Based on damages sustained by the condominiums as the result of moisture intrusion, Plaintiffs allege defective construction on the part of Harbour Pointe Builders and Gemini Builders, d/b/a the Dragas Companies. The plaintiff also alleges that the moisture intrusion resulted from the alleged defective Exterior Insulation Finishing System ("EIFS") manufactured by Dryvit and installed at the condominiums. The record shows that Gemini contracted with Kemp Contracting, Inc. ("Kemp") to provide and install the EIFS materials. Kemp contracted with Bishop Wall Systems ("Bishop"), a supplier, for the purchase of the necessary EIFS materials. The record does not indicate that Plaintiffs had any contractual relationship with Dryvit, Kemp, or Bishop.

## A. *Standard for Demurrer*

A demurrer tests the legal sufficiency of an aggressive pleading and will be sustained when the pleading fails to state a claim upon which relief may be granted. The pleadings must be considered in a light most favorable to the plaintiff. *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 226 (2001). A demurrer does not permit an evaluation of or a decision on the merits of a claim. *See id.* at 228. The court accepts as true all material facts properly pleaded and "all reasonable factual inferences fairly and justly drawn from the facts alleged." *Ward's Equipment*, 254 Va. at 382 (quoting *Fox v. Custis*, 236 Va. 69, 71 (1988)).

## B. *Count XVI: Violation of the Deceptive Advertising Statute, Va. Code § 18.2-216*

### 1. *Demurrer*

Plaintiff alleges in the Amended Bill of Complaint that Dryvit circulated advertising information that deceived or misled the public as to the quality and water-resistant nature of EIFS in order to procure increased sales. Plaintiff provides the Court with several of these advertising brochures and materials in response to Dryvit's Motion Craving Oyer. Dryvit demurs to this count, arguing that Plaintiff cannot have been misled by these materials since they did not purchase the EIFS. Defendant also argues that a violation of the Deceptive Advertising Statute is akin to a fraud claim and must be pleaded with specificity. This Court need not reach the merits of the parties' arguments because the claim is barred by the statute of limitations.

### 2. *Special Plea*

The statute of limitations for deceptive advertising claims is the "catch-all" provisions of § 8.01-248, providing that the action be brought within two years after the accrual of the right of action. *Parker-Smith v. STO*, 262 Va. 432, 438 (2001); *McMillion v. Dryvit Systems, Inc.*, 262 Va. 463, 467 (2001). A cause of action accrues either on the date of injury to persons or property or on the date of a breach of contract or duty, and not upon discovery of the resulting injury or damage. VA. Code § 8.01-230. Because a cause of action is distinct from a right of action, this Court must determine when the plaintiff's right to bring the action accrued. *Stone v. Ethan Allen, Inc.*, 232 Va. 365 (1986). However, a right of action cannot exist without a cause of action. *Id.*

Section 59.1-68.3 gives a right of action to "any person who suffers loss" due to another's violation of the deceptive advertising statute. Considered in conjunction with the terms of § 8.01-230, the time that the Plaintiffs "suffered loss" was not upon the discovery of the EIFS-related damage. The date of loss occurred either when the EIFS was chosen by the builders or installed by Kemp because the Plaintiff did not receive the quality product and construction contemplated by the contractual relationship with Gemini. According to the Plaintiff's Amended Motion for Judgment, the builders decided to use EIFS in 1993. Plaintiff also states that each of the owners had purchased units by August 6, 1997, and that the Lesner Point Condominium Association and Board came into existence by July 1995. (Plaintiff's Brief in Support of Equitable Estoppel, page 3.) At the latest, the statute of limitations for the deceptive advertising claim expired in August 1999. Since Plaintiff did not file this cause of action until July 2000, the claim is barred by § 8.01-230 and this Court grants the Defendant's Special Plea as to Count XVI.

## C. *Count XVII: Negligence and Negligence Per Se*

Plaintiff claims that Dryvit was negligent in the testing, manufacturing, marketing, and certification of EIFS installers. Plaintiff also maintains an action for negligence *per se*, claiming that Dryvit "violated the Virginia Building Code." Defendant demurs to both allegations. First, Dryvit argues that the economic loss rule bars plaintiff's recovery for negligence. Second, Dryvit claims that the Plaintiff cannot maintain an action for negligence *per se* because the Virginia Building Code contemplates the construction of buildings, not the marketing and manufacture of the materials.

### 1. *Negligence*

The "economic loss rule" bars recovery in tort for "disappointed economic expectations." Although § 8.01-223 abrogates the common law requirement of privity, the Virginia Supreme Court has interpreted this statute strictly to apply only in negligence cases involving injury to person or property. *Blake Const. Co. v. Alley*, 233 Va. 31 (1987). As a result of this construction, the economic loss rule applies when a plaintiff is not in contractual privity with the defendant and fails to allege injury to person or property. *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419 (1988).

Neither party disputes a lack of privity between the parties. However, the parties disagree as to whether the damages sustained by the plaintiff constitute injury to property. Plaintiff argues that the EIFS allowed water

infiltration into the structure and damaged "other property," such as doors and other such elements. Therefore, privity between the parties is not necessary and the economic loss rule does not apply. However, the Virginia Supreme Court rejected this argument in the factually similar case of *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419 (1988). In *Sensenbrenner*, the plaintiff landowner contracted with a builder for the construction of a new home and swimming pool. The builder then contracted with a subcontractor to install the pool. Shortly after construction, the pool settled due to faulty construction on a fill. As a result of this settlement, several water pipes burst and caused the foundation of the plaintiff's home to crack. Although the faulty pool installation resulted in damage to the surrounding property, the Court did not find that the plaintiff's suffered any injury to property creating a negligence cause of action. Instead, the Court held that the failure of the component part purchased as part of the construction package that caused a diminution in the value of the property created only disappointed economic expectations. As a result, the economic loss rule barred recovery on the plaintiff's negligence cause of action.

This Court has similarly resolved this issue in *MacConkey v. F. J. Matter Design, Inc.*, 54 Va. Cir. 1 (2000). The *MacConkey* case involved third-party motions arising from a plaintiff landowner's Motion for Judgment for judgment against the general contractor, F. J. Matter, for EIFS-related damages. The MacConkey's had contracted with F. J. Matter for the construction of a home. F. J. Matter sued STO Corporation, the manufacturer of the EIFS installed on the MacConkey's home. However, these parties were not in privity; F. J. Matter had contracted with Custom Interiors for the supply and installation of the EIFS. Citing *Sensenbrenner*, this Court found that the EIFS was a component part of the construction package that sustained the alleged injury and that the resulting damage was a diminution in the value of the subject of the contract, the home. As a result, this Court sustained STO's Demurrer and dismissed the negligence claim.

In the instant case, Plaintiff's allegations do not differ from the allegations of the plaintiffs in *Sensenbrenner* and *MacConkey*. Lesner Pointe contracted with the builders for the construction of condominiums that included the installation of EIFS. Water intrusion damaged the EIFS and caused wood rot and other structural damages. Although the plaintiff claims that the recovery is sought for damages to the component parts, the plaintiff's negligence action attempts to recover in tort for damage to the condominiums, the subject of the contract. Although plaintiff attempts to save this cause of action by alleging the jeopardized health of the individual condominium owners due to the accumulation of mold, the plaintiff has not provided this

Court with any specific allegations of actual injury to persons to support a negligence action. For the reasons stated above, this Court finds that the Plaintiff's negligence claim is barred by the economic loss rule.

### 2. *Negligence Per Se*

Plaintiff also alleges that Dryvit was negligent *per se* for failing to adequately test, design, and manufacture a water-resistant cladding and for failing to train installers to provide a cladding which excluded water in accordance with the Virginia Building Code. Plaintiff argues that the economic loss rule does not bar recovery under a cause of action for negligence *per se* because the duty arises by statute. This is a circular argument. Under § 36-99, the Virginia Building Code regulates the construction of and installation of equipment in buildings. The key here is that the statute is a regulation for safety and was not intended to provide the basis of a duty in a negligence claim for damages between a manufacture and a subsequent homeowner.

Therefore, this Court sustains the Defendant's Demurrer as to Count XVII and dismisses both the negligence and negligence *per se* claims.

### D. *Count XVIII: Negligent Misrepresentation*

In the Amended Motion for Judgment, the Plaintiff alleges that Dryvit made false representations about the quality and nature of EIFS. The Plaintiff argues that Dryvit should have known that Plaintiffs would rely on these representations and did rely to their detriment. Dryvit argues that Virginia law does not recognize a separate cause of action for negligent misrepresentation. Plaintiff does not rebut this argument in its Brief in Opposition to Dryvit's Demurrers and addresses the allegation as "Constructive Fraud/Negligent Misrepresentation."

In Count XVIII of the Amended Motion for Judgment, the Plaintiff essentially alleges a cause of action for constructive fraud: a negligent misrepresentation, reliance, and detriment. Furthermore, Plaintiff's recharacterization appears to acknowledge the validity of Defendant's argument. However, this Court will address Dryvit's Demurrer. In *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, the Virginia Supreme Court stated that "the essence of constructive fraud is negligent misrepresentation." *Id.* at 559. The courts have treated such allegations as the basis for a constructive fraud claim. *Id.* at 558-59; *Mortarino v. Consultant Engineering Servs.*, 251 Va. 289, 294-95 (constructing fraud requires plaintiff

to show that "a false representation of material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance"). Various circuit courts have interpreted this statement and these cases to preclude a separate action for negligent misrepresentation. *Bay Point Condo. Assoc. v. RML Corp.*, 52 Va. Cir. 432, 443 (Norfolk 2000) (declining to recognize a separate cause of action for negligent misrepresentation in the absence of an affirmative Virginia Supreme Court decision recognizing such an action); *see also Stoney v. Franklin*, 54 Va. Cir. 591, n. 2 (Suffolk 2001) (holding that "no such cause of action exists under Virginia law"). In light of these decisions, this Court declines to recognize negligent misrepresentation as a distinct cause of action and sustains the Defendant's Demurrer as to Count XVIII.

### E. *Count XIII: Actual Fraud*

Plaintiff alleges that Dryvit intentionally misrepresented the nature and quality of EIFS, including the degree of maintenance required, the history of water intrusion problems, and the adequacy of product testing. The Defendant counters these allegations, arguing that Plaintiff (1) fails to allege with specificity the actual false representations made by Dryvit, (2) does not allege statements that relate to existing facts and are material, and (3) incorrectly premises the claim on Dryvit's failure to conform to a non-existent duty to disclose. The necessary elements of a cause of action for fraud are: (1) a false representation, (2) of material fact, (3) made intentionally or knowingly, (4) with the intent to mislead, (5) reliance by the misled party, and (6) injury resulting from the reliance. *Beck v. Smith*, 260 Va. 452, 457 (2000). To be a "material fact," the fact represented must relate to a present, existing fact and cannot be premised on a promise of future performance. The plaintiff must plead each of these elements with particularity even at the demurrer stage. *Mortarino v. Consultant Engineering Serv.*, 251 Va. 289 (1996). The plaintiff has the burden of proving fraud by clear and convincing evidence. *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308 (1984).

Plaintiff alleges several statements taken from Dryvit promotional material, including statements that EIFS is weather resistant, maintenance free, energy efficient, code-compliant, and a moisture-penetration reducing system. Plaintiff also supplies this Court with facts about the resulting water-infiltration and maintenance caulking required at the condominiums. Additionally, the materials in Plaintiff's Response to the Motion Craving Oyer also provide substantial support for the allegation that Dryvit knew of the water infiltration problems prior to and while making these representations

and attempted to mask the existence of such problems. However, the majority of the alleged representations do not refer to facts in existence at the time of the representation. In *McMillion v. Dryvit Systems, Inc.*, 262 Va. 463 (2001), the Virginia Supreme Court considered these same representations. The Court held that such representations "are merely statements of opinion about how Dryvit EIFS would perform in the future if utilized in constructing a home." *Id.* at 471-72. Therefore, representations concerning maintenance, water resistance, energy efficiency, and related information refer to promises of future performance and cannot provide the basis for fraud. Further, the plaintiff alleges that Dryvit falsely represented the nature of government approval of EIFS. Because compliance with building codes and the existence of government approval refers to the present character of the EIFS, the one statement is sufficient to allege that Dryvit knowingly and falsely represented a material fact concerning EIFS with the intent to mislead. Plaintiff also sufficiently states facts alleging injury and damage as a result of alleged EIFS defects.

The Plaintiff does not plead with specificity the reliance aspect of actual fraud. The specific details of the alleged reliance or the Plaintiff's right to rely upon the representations are missing. The Amended Motion for Judgment alleges that Dryvit disseminated false representations to the "consuming public, including Plaintiffs," Dryvit provided false information with the knowledge that these representations "would be 'parroted' by architects, applicators, builders, and real estate agents," and that these individuals did repeat such information to Plaintiff Board and Association Members. Despite these allegations, Plaintiff does not successfully identify the individuals or agents of Dryvit or EIMA who made these representations or the time and place of such representations. Plaintiff does not allege which builders or applicators made such statements nor when such statements were made. Additionally, the Plaintiff does not specifically allege which advertisements were presented to Plaintiff or caused Plaintiff's reliance. Such details are necessary to state a cause of action for fraud. *Tuscarora v. B.V.A. Credit Corp.*, 218 Va. 849, 858 (1978); *see also Genito Glenn v. National Housing Bldg. Corp.*, 50 Va. Cir. 71, 82-83 (Virginia Beach 1999) (demurrer sustained on fraud claim because plaintiff failed to show which officers and employees of defendant corporation made false statements or how and when the alleged statements were made).

Furthermore, Plaintiff cannot show any right to rely on these representations. *Metrocall of Del., Inc. v. Continental Cellular Corp.*, 246 Va. 365, 374 (1993) (the defrauded party must "demonstrate the right to reasonably rely upon the misrepresentations" to allege fraud); *see also Genito*

*Glenn*, 50 Va. Cir. at 84 (plaintiff could not claim the right to rely on corporation's representations when plaintiff did not enter into or have any connection with the contract for the alleged defective construction materials); *Bay Point*, 52 Va. Cir. at 444-45. Plaintiff relies on *City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438 (4th Cir. 1990), and *Harris v. Universal Ford, Inc.*, 2001 U.S. Dist. LEXIS 8913 (E.D. Va. 2001), to argue that such a relationship is not necessary to allege fraud. In these cases, the courts placed liability on manufacturers whose defective product reach the plaintiffs through a supplier. However, these cases are factually distinguishable from the instant case. In *Madison*, the City of Richmond contracted for the installation of underground water pipes with a contractor supplied exclusively by defendant manufacturer. Although the facts recited in the opinion do not disclose any direct communication between the manufacturer and the plaintiff, the court found that city representatives reviewed the specifications submitted by the contractor that incorporated the use of the defendant's pipes and were assured by the contractor that these pipes conformed to the job requirements. Unlike the City of Richmond, Plaintiff in the instant case was not a party to the construction contract that contemplated the use of EIFS. The record does not show that Plaintiff entered into a contract with Gemini for the construction of a condominium complex using EIFS. As a result, Harbour Point is the party in this litigation analogous to the City of Richmond. The Plaintiff has not alleged a specific representation made directly to them by the builder like the City representatives in *Madison*.

Similarly, the *Harris v. Universal Ford* case is not persuasive. In *Harris*, plaintiff Harris purchased a vehicle from a Universal Ford dealership. Ford Credit Corporation supplied the vehicle to Universal Ford without disclosing the true extent of the vehicle's damage. The Court denied Ford Credit's Motion to Dismiss, holding that Harris need not show a special relationship with Ford Credit because Ford Credit knew that the vehicle would be sold to a consumer without disclosure of the defects. Harris specifically alleged representations made by Universal as to the quality of the car and produced documentation directly from Ford Credit that failed to disclose all of the car's defects to Universal Ford. As in *Madison*, Harris was a direct party to the contract for the purchase of the alleged defective item. In the instant case, Plaintiff was never a party to the contract for the purchase or installation of the EIFS. Additionally, the Plaintiff has neither alleged any specific content of or circumstances surrounding any statements or documents given to the developers by Dryvit nor shown any specific reliance by the developers. Because Plaintiff was not a party to the contract for the purchase or use of EIFS, Plaintiff does not have the right to rely on Dryvit's misrepresentations.

This Court sustains the Defendant's Demurrer to Count XIII and dismisses Plaintiff's claim for actual fraud.

## F. *Count XIV: Constructive Fraud*

Although Plaintiff only needs to show that Dryvit made misrepresentations innocently or negligently, the element of reliance remains a requirement for a cause of action for constructive fraud. *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553 (1998). As discussed above, the Plaintiff alleges reliance, but fails to provide facts that illustrate how the plaintiffs relied absent some decision relating to the installation of the EIFS.

For this reason, this Court sustains the Defendant's Demurrer to Count XIV and dismisses Plaintiff's claim for constructive fraud.

## G. *Count XII: Civil Conspiracy*

Plaintiff alleges that Dryvit and the Exterior Insulation Manufacturers's Association (EIMA) conspired to suppress knowledge of the product flaws and to deceive various regulatory agencies (NES, BOCA, HUD) and the public as to the correction of reported water intrusion problems with EIFS. In short, Plaintiff alleges that Dryvit and other EIMA members conspired to fraudulently market and promote EIFS by making misrepresentations. Defendant makes two arguments. First, Dryvit argues that Plaintiff fails to allege the necessary agreement between Dryvit and EIMA to commit an unlawful act. Second, Dryvit argues that EIMA, an organization, cannot conspire with a member because a legal entity cannot conspire with itself.

In order to state a cause of action for civil conspiracy, a plaintiff must first prove the existence of the underlying cause of action. Second, the plaintiff must allege facts establishing an "agreement between two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." The plaintiff must also allege that this agreement caused damage. In the Motion for Judgment in the instant case, the Plaintiff's cause of action for civil conspiracy should be dismissed because Plaintiff did not sufficiently allege a cause of action for fraud. *Commercial Business Sys., Inc. v. Halifax Corp.*, 233 Va. 292, 300 (1997) (court held that "without proof of the underlying tort, there can be no conspiracy to commit the tort"); *see also Almy v. Grisham*, 55 Va. Cir. 401, 404 (Albemarle County 2001) (plaintiff must allege sufficiently the underlying cause of action in order for a civil conspiracy claim to survive demurrer).

Plaintiff makes various allegations concerning misrepresentations by Dryvit and other named members of EIMA about the quality, durability, water-resistant nature, and other characteristics of EIFS. Additionally, the Plaintiff alleges that Dryvit and other EIMA members lobbied for industry regulatory committees and for industry definitions that would deflect liability onto the contractors. Plaintiff argues that these actions support an inference that "Dryvit, other manufacturers, and other members of EIMA reached an express agreement or tacit understanding to suppress knowledge about the defects and hazards of EIFS while marketing EIFS without adequate testing or warning." Plaintiff submits various inter-office memos among Dryvit personnel, minutes from EIMA meetings listing the various manufacturer-members by name, and letters from EIMA to outside organizations that discuss problems with EIFS and support many of the factual statements made in the Plaintiff's Motion for Judgment. This documentation alleges facts sufficient to establish that Dryvit knowingly made misrepresentations. Despite proof of these representations, the Plaintiff cannot sufficiently allege fraud because Plaintiff cannot show the necessary reliance on these representations by the unit owners.

This failure to provide proof of reliance by the unit owners also impacts the Plaintiff's ability to show damage as a result of the conspiracy among EIMA members. Although the conspiracy to fraudulently advertise and market resulted in the use of EIFS in the construction of the condominiums at issue, the damages claimed by Plaintiff stem from the alleged defects of the product and/or its installation by the purchasers and builders.

Accordingly, this Court sustains the Defendant's Demurrer and dismisses Plaintiff's claim for civil conspiracy without reaching the merits of the Defendant's second argument.

## H. *Special Pleas to Actual Fraud, Constructive Fraud, and Civil Conspiracy*

Because the limitations period for civil conspiracy is based on the statute of limitations for the underlying act, then Plaintiff's claims of fraud and civil conspiracy are subject to the same two-year period. *E.g., Cherokee Corp. v. Chicago Title Ins. Corp.*, 35 Va. Cir. 19, 29 (Warren County 1994) (determination of statute of limitations for conspiracy claim required an examination of the underlying cause of action); *Bay Point*, 52 Va. Cir. at 449. For fraud, the statute of limitations begins to run from the time that the complaining party discovered or should have discovered the fraud in the exercise of due diligence. *See* § 8.01-230.

Dryvit argues that Plaintiff admits knowledge of possible problems as early as 1993 and by the mid-1990s, highlighting Plaintiff's statement in the Amended Motion for Judgment that EIFS garnered "national publicity" for alleged problems. Furthermore, the record indicates that the Plaintiff became aware of some leakage problems as early as 1995. Under this analysis, Plaintiff's action would be barred since the claim was not filed until 2000. Plaintiff responds that Dryvit misconstrues this statement, arguing that defendant must show that Plaintiff was aware of the publicity at the time. Plaintiff also argues that this Court should not place the date of discovery at the time Plaintiff's found leaking and moisture infiltration, but at the time the Plaintiff discovered the resulting EIFS damage. Under the Plaintiff's analysis, the date of discovery must be the moment that the condominium unit owners discovered that the EIFS was penetrable because the fraud consists of statements as to the viability of EIFS as a water-resistant, low-maintenance system. Thus, the Plaintiff was on notice of water-related problems with the structure and could have discovered the compromise of the EIFS within the two-year period.

Because the record contains conflicting evidence as to the time that the unit owners should have discovered that Dryvit made fraudulent statements, this Court denies the Defendant's Plea in Bar.

*Conclusion*

In summary, this Court holds:

1. Dryvit's Demurrer to Count XII of the Plaintiff's Amended Motion for Judgment alleging civil conspiracy is sustained;

2. Dryvit's Demurrer to Count XIII of the Plaintiff's Amended Motion for Judgment alleging actual fraud is sustained;

3. Dryvit's Demurrer to Count XIV of the Plaintiff's Amended Motion for Judgment alleging constructive fraud is sustained;

4. Dryvit's Special Plea to Count XVI of the Plaintiff's Amended Motion for Judgment alleging violations of the Deceptive Advertising Statute is sustained. This Court will not consider Dryvit's Demurrer to this count as the claim is barred by the statute of limitations;

5. Dryvit's Demurrer to Count XVII alleging negligence and negligence *per se* is sustained;

6. Dryvit's Demurrer to Count XVIII of the Plaintiff's Amended Motion for Judgment alleging Negligent Misrepresentation is sustained;

7. Dryvit's Pleas as to Counts XII, XIII, and XIV alleging civil conspiracy, actual fraud, and constructive fraud are denied;

8. Plaintiffs are granted leave to amend the Motion for Judgment as to Counts XII, XIII, and XIV in a manner consistent with the opinion within fourteen days of entry of this Court's order.

September 27, 2002

On October 23, 2000, Defendant Gemini filed both a cross-claim against Defendant Dryvit and a third-party motion for judgment against Defendant Bishop Wall Systems seeking indemnification and contribution. Dryvit and Bishop had filed pending cross-claims against third-party defendant Kemp Contracting. Gemini mailed their cross-claim to Dryvit's counsel and attempted to serve Dryvit through the Secretary of the Commonwealth. Dryvit alleges that they never received the cross-claim; however, Gemini received a canceled check for service from the Secretary of the Commonwealth, but no return of service was received from the Secretary of the Commonwealth. Gemini did nothing more to ensure that the cross-claim was properly served on Dryvit.

Dryvit moved to dismiss the cross-claim on August 30, 2002, on grounds that Gemini had not properly served Dryvit within the one-year limitation required by Virginia Supreme Court Rule 3:3. Gemini subsequently moved to nonsuit its cross-claim at the hearing conducted on September 13, 2002. Gemini is now before this Court moving to nonsuit pursuant to Virginia Code § 8.01-380.

*Analysis*

I. *Whether Gemini's motion for nonsuit of its cross-claim against defendant Dryvit should be granted, where Dryvit has filed cross-claims against third-party defendant Kemp seeking indemnification*

Pursuant to Virginia Code § 8.01-380(B), one nonsuit may be taken to a cause of action or against the same party to the proceeding as a matter of right. . . . However, § 8.01-380(D) provides:

A party shall not be allowed to nonsuit a cause of action, without the consent of the adverse party who has filed a counterclaim, *cross-claim*, or third-party claim which arises out of the same transaction or occurrence as the claim of the party desiring to nonsuit unless the counterclaim, cross-claim or third-

party claim can remain pending for *independent adjudication* by the court.

(Emphasis added.)

Dryvit, in opposition to the nonsuit, moves under § 8.01-380(C). However, after the 2001 amendments to § 8.01-380, the former subsection (C) is now subsection (D).

In the present case, Gemini has moved to nonsuit its cross-claim against Dryvit and Bishop Wall. However, Dryvit and Bishop Wall, who refuse to consent to the nonsuit, have pending cross-claims against third-party defendant Kemp Contracting. Therefore, in light of § 8.01-380(D), we must determine whether Dryvit's and Bishop's cross-claims can remain pending for "independent adjudication" if Gemini's cross-claim is nonsuited. If independent adjudication is possible, then the nonsuit should be granted.

There is no question that a third-party claim is a derivative claim and, as such, it cannot be adjudicated independently. *See Gilbreath v. Brewster*, 250 Va. 436, 442, 463 S.E.2d 836, 839 (1995). In *Gilbreath*, Gilbreath (an employee of Wells Cargo) and Brewster were involved in an auto accident. Victoria Brann, who was a passenger in Brewster's car, filed an action against Gilbreath and Wells Cargo. Gilbreath and Cargo subsequently asserted a third-party claim against Brewster for contribution in the Brann action. *Id.* at 438. Brann attempted to nonsuit her claims against Gilbreath and Cargo which the trial court ultimately denied. *Id.* at 439. The Supreme Court held that because of the derivative nature of Gilbreath's third-party claim, the third-party claim could not be independently adjudicated as required by § 8.01-380 and thus the trial court did not err in vacating its orders to nonsuit. *Id.* at 443.

Like the third-party claim for contribution in *Gilbreath*, Dryvit and Bishop's third-party claims for indemnification against Kemp are derivative in nature from Gemini's cross-claim. If Gemini succeeds on its cross-claim, Dryvit and Bishop may have valid claims for indemnification against Kemp. Consequently, under the reasoning of *Gilbreath*, Dryvit's and Bishop's third-party claims cannot be independently adjudicated from Gemini's cross-claim. Therefore, without Dryvit and Bishop's consent, Gemini may not nonsuit its cross-claim.

Turning to Gemini's arguments in favor of nonsuit, Dryvit does not seem to dispute (and thus it does not appear to be an issue, although Gemini argues it in their brief) that Gemini is permitted a voluntary nonsuit even though they have not served Dryvit or Bishop. *See McManama v. Plunk*, 250 Va. 27, 458 S.E.2d 759 (1950). Thus the determinative issue remains whether Dryvit's cross-claim against Kemp could be independently adjudicated.

Gemini argues in their brief supporting their motion to nonsuit that their cross-claim against Dryvit is independent from *plaintiff's* claims against Gemini and thus can be "independently adjudicated," which under § 8.01-380(D), they argue, would allow a nonsuit. *See* Gemini's Memorandum in Support of Nonsuit (hereinafter Gemini's Memorandum), p. 7. However, the statute (and the case law) contemplates the independence of a "counterclaim, cross-claim, or third-party claim which arises out of the same transaction or occurrence as the *claim of the party desiring to nonsuit.*" (Emphasis added.) Code § 8.01-380(D). In other words, it is the independence of Dryvit's and Bishop's cross-claim in relation to Gemini's cross-claim that is at issue here and not the independence of Gemini's cross-claim in relation to Plaintiff's original cause of action against Gemini. (Although Gemini's cross-claim for indemnification is likely intertwined with plaintiff's claims and not independent.) Dryvit and Bishop's cross-claims for indemnification against Kemp are strongly related to Gemini's cross-claim for indemnification and contribution because they concern liability and apportionment of damages if Gemini is found to have constructed the condominiums defectively and then seeks indemnification.

Gemini also contends that the case of *Lee Gardens v. Arlington County Bd.*, 250 Va. 534, 463 S.E.2d 646 (1995), does not apply to this case. *See* Gemini's Memorandum, p. 7. In *Lee Gardens*, plaintiffs brought a suit seeking a decrease in a tax assessment and the Defendant Arlington County had filed a counterclaim seeking an increase in a tax assessment. *See Lee Gardens* at 536. The court upheld the trial court's ruling that plaintiffs could not take a nonsuit because defendant's counterclaim could not be independently adjudicated. *Id.* at 542. Gemini argues that this case can be distinguished from the case here because the situation in *Lee Gardens* involved a counterclaim and this involves a cross-claim. This argument has no merit because Code § 8.01-380 expressly refers to both counterclaims and cross-claims. Therefore, a court must make the "independent adjudication" determination regardless of whether it is a counterclaim or cross-claim in deciding whether to allow a nonsuit.

Additionally, the fact that the Court has discretion under Virginia Supreme Court Rule 3:9 to order separate trials for any cross-claim, as Gemini seems to contend, does not have any bearing as to whether a nonsuit may be taken in this context under § 8.01-380 and whether such claims are independent in this case. Regardless, Rule 3:9 would not likely be appropriate especially since the cross-claims at issue here are for indemnification and contribution and would not necessarily warrant a separate trial.

There is additional authority to suggest that a third-party claim or cross-claim for indemnification cannot be independently adjudicated. One court has expressly held that, "A third-party claim for contribution or indemnification, by its very nature 'cannot remain pending for independent adjudication'." *See Skinner v. Clements*, 45 Va. Cir. 482 (Spotsylvania County 1998); *see also Hitt v. McGowan*, 47 Va. Cir. 300 (Spotsylvania County 1998), where the court denied a nonsuit and held that a counterclaim relating to the same occurrence could not be adjudicated independently.

Gemini makes an additional argument supporting nonsuit at the end of their brief in the section discussing the next issue concerning service. (They actually should have placed this under their first section.) *See* Gemini's Motion, pp. 17-19. Gemini argues that Dryvit's cross-claim against Kemp is a "nullity" because plaintiff's claims against Dryvit have been dismissed, and thus a nonsuit would be allowed under § 8.01-380. *See id.* However, Dryvit and Bishop's cross-claims against Kemp are not limited to indemnification for losses incurred based solely on liability to the plaintiffs. Rather the cross-claim states that Kemp is obligated to indemnify Dryvit and Bishop for "any losses or claims suffered by them due to its wrongful acts involving the installation of the EIFS." *See* Dryvit's Cross-Claim Against Third-Party Defendant Kemp, p. 2. Dryvit ultimately moves for judgment against Kemp for "any loss incurred and/or judgment which may be entered against Dryvit." *Id.* This would include any judgment entered against Dryvit based on Gemini's cross-claim.

Gemini also makes an argument based on the theory of "reverse indemnity." They contend that Dryvit's cross-claim against Kemp is essentially "reverse indemnity" and that no such cause of action exists in Virginia. *See* Gemini's Motion, pp. 18-19. The federal cases relied on by Gemini, which demonstrate this theory, involve manufacturers of asbestos (who were found liable to plaintiffs) suing the plaintiffs' employer, who purchased the asbestos, for indemnification because they did not adequately protect their employees. *See White v. Johns-Manville Corp.*, 662 F.2d 243 (4th Cir. 1980); *Jennings v. Franz Torwegge Machine Works*, 347 F. Supp. 1288 (W.D. Va. 1972). The present cross-claim is not a claim for reverse indemnity. The cases cited by Gemini are substantially different from this case where Dryvit contracted with Kemp to provide and install the EIFS material, thus creating a contractual duty from Kemp to both Dryvit and plaintiffs.

In short, Defendant Dryvit and Bishop's cross-claims against third-party Defendant Kemp cannot be independently adjudicated. Dryvit and Bishop have not consented to a nonsuit and the above case law suggests that cross-claims for indemnification and contribution by their very nature cannot

be independently adjudicated. Therefore, pursuant to Virginia Code § 8.01-380, Gemini's request for nonsuit is denied.

II. *Whether Defendant Dryvit's Motion to Dismiss Gemini's cross-claim should be granted for failure to serve Dryvit within one year and failure to exercise due diligence, where Gemini mailed the cross-claim to Dryvit's counsel and received a returned check after mailing the pleading to the Secretary of the Commonwealth*

Turning to the second issue, Dryvit's motion to dismiss is granted. Gemini failed to serve Dryvit within one year and failed to exercise due diligence. Furthermore, mailing a copy of the cross-claim to counsel for Dryvit did not constitute service, nor did Dryvit waive service of process by filing a motion to dismiss.

A. *Gemini Did Not Exercise Due Diligence*

Virginia Supreme Court Rule 3:3 provides in part:

> No judgment shall be entered against a defendant who was served with process more than one year after the commencement of the action against him unless the court finds as a fact that the plaintiff exercised *due diligence* to have timely service on him.

(Emphasis added.) Virginia Code § 8.01-275 similarly requires due diligence and timely service within one year of commencement of an action or suit. There is no variance between Rule 3:3 and § 8.01-275, and such provisions were enacted to prevent abuse of the judicial process. *See Waterman v. Halverson*, 261 Va. 203, 540 S.E.2d 836 (1995). It is the plaintiff's burden to establish the exercise of due diligence to perfect service within the one year limitation. *See id*.

Due diligence has been held to mean "devoted and painstaking application to accomplish an undertaking." *See Dennis v. Jones*, 240 Va. 12, 19, 393 S.E.2d 390, 393 (1990). Diligence is a factual question to be determined according to the circumstances of each case. *See id*. In *Dennis*, plaintiff, in an auto accident case, attempted to serve defendant by order of publication. *Id*. at 14. The plaintiff filed an affidavit stating that the whereabouts of the defendant were unknown. *See id*. at 16-17. Prior to this, plaintiff had talked with two "informal contacts" at two different government

agencies to determine defendant's whereabouts, delivered service papers to the sheriff who did not hold the papers the required twenty-one days due to a clerical error, and attempted service through the DMV which the court found to be ineffective. The court held that these actions did not rise to the level of due diligence and dismissed the case under Rule 3:3. *Id.*

Additionally, as counsel for Dryvit notes, other courts have dismissed claims for lack of due diligence under circumstances similar to the present case. *See Bender v. VMRC*, 2000 Va. App. LEXIS 34 (Va. App., January 27, 2000) (failure to serve timely because of clerical error without taking any further steps to serve does not meet due diligence standard); *Pearson v. Brown*, 45 Va. Cir. 352 (Fairfax 1998) (one attempted service does not equal due diligence).

The court's use of the words "painstaking" and "devoted" in *Dennis* suggests that the standard for due diligence is rather high. As noted earlier, Gemini mailed a copy of the cross-claim with the filing fee to the Secretary of the Commonwealth and mailed a copy to Dryvit's counsel but never served Dryvit with the claim. These actions were taken in October of 2000. Nothing more was done to perfect service. Gemini received a returned check from the Secretary's office but never followed up to see if Dryvit was served. Gemini failed to investigate further, until just recently, when it did not receive confirmation of service from the Secretary. Furthermore, a certificate of compliance was never sent to this court from the Secretary because, as Gemini admits, they erroneously addressed the affidavit sent to the Secretary to the Norfolk Circuit Court. This could hardly be considered a "painstaking and devoted" effort.

Gemini further argues that they followed the requirements of § 8.01-329(C), which sets out procedures for service through the Secretary of the Commonwealth. They have provided an affidavit from an employee of the Secretary of the Commonwealth who stated that Gemini "likely" followed the correct procedures to effectuate service, although they have no record that they did. In fact, Gemini may have followed the correct procedures and service may not have been effectuated due to the errors of the Secretary. However, § 8.01-329(C) does not serve to abrogate the duty of due diligence under Rule 3:3 required of all those who file causes of action. Mere compliance with the statute may not in all cases constitute due diligence.

## B. *Gemini Did Not Effectuate Service by Mailing a Copy of the Cross-claim to Dryvit's Counsel*

Gemini further argues that mailing a copy of the cross-claim to Dryvit's counsel was enough to effectuate service under Code § 8.01-314. Section 8.01-314 states:

> When an attorney authorized to practice law in this Commonwealth has entered a general appearance for any party, any process, order or other legal papers to be used in the proceeding may be served on such attorney of record.

Gemini argues that Dryvit has made a general appearance in this case by responding to plaintiff's claims. *See* Gemini's Motion, pp. 12-14. They contend that the "in the proceeding" language is very broad and encompasses plaintiff's action as well as their cross-claim. *See id.* However, when read in the context of Rule 3:9, Dryvit has not made a general appearance for purposes of Gemini's cross-claim because they have not answered the cross-claim or appeared in any way as defendants to the cross-claim. Rule 3:9 states in part:

> A cross-claim is a *new action* and all provisions of these Rules applicable to notices of motion for judgment shall apply to cross-claims, except those provisions requiring payment of writ tax and clerk's fees; and all provisions of these Rules applicable to defendants shall apply to the parties on whom cross-claims are served.

(Emphasis added.) Because a cross-claim is a new action, service pursuant to Rule 3:3 is required.

Gemini also contends that Rule 1:12 allows for service by mailing. *See* Gemini's Motion, p. 14. Rule 1:12 states:

> All pleadings, motions, and other papers *not required to be served otherwise* . . . shall be served by delivering, dispatching by commercial delivery service, transmitting by facsimile, or mailing a copy to each counsel of record on or before the day of filing.
>
> Service pursuant to this Rule shall be effective upon such delivery, dispatch, transmission, or mailing. . . .

(Emphasis added.) Because this is a cross-claim and thus a new action, service is required pursuant to Rule 3:3. Therefore, this qualifies as a motion "to be served otherwise" under Rule 1:12. Additionally, as Dryvit argues, Rule 1:12 (and Code § 8.01-314) refers to what is called *mesne* process. *See* Dryvit's Motion to Dismiss, p. 8, quoting Friend, *Virginia Pleading and Practice*, § 4-3(e)(2) (1998). *Black's Law Dictionary* defines *mesne process* as, "As distinguished from *final* process, this signifies any writ or process issued between the commencement of the action and the suing out of execution." Service of a cross-claim is a new action, thus it is not *mesne* process and therefore does not fall under the purview of Rule 1:12.

Gemini also uses § 8.01-288 to argue that by mailing the cross-claim to counsel for Dryvit and the Secretary of the Commonwealth within the prescribed period, this is "sufficient" and thus satisfies the "catch-all" provision of § 8.01-288. *See* Gemini's Motion, pp. 14-15. Section 8.01-288 states:

> Except for process commencing actions for divorce or annulment of marriage or other actions wherein service of process is specifically prescribed by statute, process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter.

Gemini's argument fails for two reasons. First, although the mailed copy was addressed to and reached Dryvit's counsel, Dryvit's counsel was not the necessary party to be served. Under a new cause of action, the defendant must be served. This section cures defective service when process actually reaches the *necessary* person. *See Bendele v. Commonwealth, Dep't of Medical Services*, 29 Va. App. 395, 512 S.E.2d 827 (1999). Second, although Gemini may have mailed the cross-claim to the Secretary with the intention that it be addressed to Dryvit, there is no evidence that Dryvit actually received the cross-claim as required by § 8.01-288.

*C. Dryvit Did Not Waive Service by Filing a Motion to Dismiss the Cross-claim*

Gemini finally argues that Dryvit waived service when it filed its motion to dismiss Gemini's cross-claim. *See* Gemini's Motion, pp. 15-17. Both Gemini and Dryvit rely on *Gilpin v. Joyce*, 257 Va. 579, 581, 515 S.E.2d 124, 125 (1999). In *Gilpin*, defendant and plaintiff were involved in an auto accident. *Id.* at 581. Defendant filed a motion to dismiss for failure to be

served pursuant to Rule 3:3. The defendant, along with the motion to dismiss, had filed a grounds for defense and a counterclaim. The court noted:

> An appearance *for any other purpose than questioning the jurisdiction of the court — because there was no service of process,* or the process was defective, or the action was commenced in the wrong county, or the like — is general and not special, although accompanied by the claim that the appearance is only special.

*Id.* (emphasis added). The court ultimately concluded that defendant had made a general appearance because he had filed a grounds for defense and a counterclaim, thus he had waived service. *See id.* at 582.

In the present case, Dryvit has filed a motion to dismiss "because there was no service of process." Unlike the defendant in *Gilpin*, Dryvit has not filed a grounds for defense or a counterclaim against Gemini. Therefore, under the reasoning in *Gilpin*, Dryvit has made only a special appearance and thus has not waived service of process.

In conclusion, Gemini's motion for nonsuit is denied because it fails to meet the requirements of Virginia Code § 8.01-380. Dryvit's cross-claim against Kemp cannot be independently adjudicated.

Dryvit's motion to dismiss is granted. Gemini failed to serve their cross-claim on Dryvit within the one year limitation prescribed by Rule 3:3 and § 8.01-275.1.

March 20, 2003

Two questions remain as to the demurrers filed by Defendants Dryvit and Bishop. First, whether Kemp and Gemini have alleged facts with enough particularity to sustain actions based on actual fraud and constructive fraud against Dryvit and Bishop. Second, whether Kemp and Gemini have alleged facts sufficient to maintain an action for civil conspiracy.

On October 23, 2000, Defendant Gemini filed a Cross-Claim against Dryvit and a Third-Party Motion for Judgment against Bishop. This Court earlier dismissed Plaintiff's claims against Dryvit in an Order dated October 8, 2002. On October 25, 2002, Gemini's Cross-Claim against Dryvit was dismissed. Defendant Kemp subsequently filed a Cross-Claim against both Dryvit and Bishop. According to counsel for Plaintiffs, Defendants Harbour Point, Gemini and Kemp have settled and, pursuant to the settlement terms, have assigned all of their claims against Dryvit and Bishop to Plaintiffs.

This Court recently ruled on most of Gemini and Kemp's counts contained in their Cross-Claim and Third-Party Motion for Judgment. The remaining counts of actual fraud, constructive fraud, and civil conspiracy are addressed in this opinion.

A claim of actual fraud requires a showing of: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387, 390 (1994).

The general rule in Virginia is that fraud must be pled with particularity. *See Tuscarora v. B.V.A. Credit Corp.*, 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978). In *Tuscarora*, Plaintiff filed a bill of complaint alleging that Defendant "falsely and fraudulently" represented that the conveyance of a deed of trust was for a construction loan and that instead such money had been advanced for other purposes. *Id.* at 854. Defendant filed a demurrer stating that the allegations lacked specificity. *See id.* The Court noted that, "the identities of the agents, officers, and employees of BVA who are alleged to have perpetrated the fraud are not revealed, or the details of the time and place where the fraudulent acts occurred." *Id.* The Court held that the statements were too vague and indefinite and ultimately sustained the demurrers to the fraud claims. *See id.*

Among other allegations of actual fraud, Gemini and Kemp have specifically alleged:

"Dryvit and/or Bishop's misrepresentations include, *inter alia*, that Dryvit's EIFS was moisture resistant, low maintenance or maintenance free, cost effect [sic], and would be effective cladding suitable for use in residential structures." Kemp's Cross-Claim, p. 10; *see also* Gemini's Third-Party Motion for Judgment, pp. 24-25.

"Dryvit's and/or Bishop's misrepresentations include, *inter alia*, that Dryvit's EIFS had been adequately tested." Kemp's Cross-Claim, p. 10; *see also* Gemini's Third-Party Motion for Judgment, p. 25.

"Dryvit and/or Bishop's misrepresentations regarding the qualities of Dryvit's EIFS and the training of its applicators were false and were willful and reckless misrepresentations and omissions of material fact made with the intent to induce Kemp and the general public to act upon them and purchase Dryvit's EIFS." Kemp's Cross-Claim, p. 11; *see also* Gemini's Third-Party Motion for Judgment, p. 25.

Analogous to the fraud claims in *Tuscarora*, the claims in the instant case are vague and indefinite. Gemini and Kemp simply allege that Dryvit and Bishop made "misrepresentations" concerning the quality of EIFS, the

maintenance of EIFS, that the EIFS had been adequately tested. These allegations provide no particularity as to the agents, officers or employees who made the misrepresentations or the "time and place where the fraudulent acts occurred." Therefore, under the *Tuscarora* standard, such allegations lack the requisite particularity to sustain actions for actual fraud at the demurrer stage.

Furthermore, fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. *See Blair Construction, Inc. v. Weatherford*, 253 Va. 343, 346, 485 S.E.2d 137, 139 (1997); quoting *Patrick v. Summers*, 235 Va. 452, 454, 369 S.E.2d 162, 164 (1988). In *Blair*, Plaintiff argued that Defendant committed fraud when he promised to perform a construction job for $260,150 and later stated that he would need an additional $75,000 to complete the project. *Blair Construction*, 253 Va. at 347, 485 S.E.2d at 139. Such a promise, the Court held, failed to address present, material facts and was simply a promise to perform work in the future. *See id.*, 253 Va. at 348, 485 S.E.2d at 140.

In the instant case, Gemini and Kemp have propounded allegations claiming that Dryvit and Bishop made misrepresentations concerning the maintenance, moisture resistance, and cost effectiveness of the EIFS product. Like the promises of the Defendant to perform in *Blair*, these allegations are simply promises that relate to the performance of EIFS in the future. They are not representations of the qualities of the EIFS that may have existed at the time of the purchase, which would constitute present or pre-existing facts. Therefore, in light of *Blair*, such allegations concerning future events are insufficient to sustain a fraud action.

The case of *McMillion v. Dryvit*, 262 Va. 463, 552 S.E.2d 364 (2001), also provides guidance as to fraud and the EIFS product specifically. Fraud must relate to a pre-existing fact and not a mere expression of an opinion. *See id.*, 262 Va. at 471, 552 S.E.2d at 368. In *McMillion*, Defendant Dryvit was alleged to have made misrepresentations concerning insulation and water penetration of the EIFS product. *Id.*, 262 Va. at 470, 552 S.E.2d at 368. The Court disagreed with the contention that these representations concerned existing facts. An existing fact, it noted, would be a statement similar to one in a Dryvit brochure which claimed that it used only 100 percent acrylic polymer formula in its finish coating. *See id.*, 262 Va. at 472, 552 S.E.2d at 369. It held that "the alleged misrepresentations identified by the McMillions, when taken in context . . . are merely statements of opinion about how Dryvit's EIFS would perform in the future if utilized in constructing a home." *Id.*, 262 Va. at 471, 552 S.E.2d at 369. The Court ultimately sustained demurrers to the fraud counts. *See id.*

The allegations in the present case are clearly analogous to those in *McMillion*. Gemini and Kemp's pleadings contain numerous allegations that address representations concerning the effectiveness of EIFS as a cladding and its suitability in residential structures. These statements describe the performance of EIFS and not the actual composition of the product. As the Virginia Supreme Court noted, such statements about EIFS are merely expressions of opinion and not representations of existing facts. The Court's rulings suggest that the demurrers to the similar allegations in the instant case be sustained.

Gemini and Kemp's counts of actual fraud fail to contain allegations of misrepresentations of existing facts and lack the requisite particularity contained in valid causes of action for fraud. For these reasons, Dryvit and Bishop's demurrers to the actual fraud counts are sustained.

In their claims of constructive fraud, Gemini and Kemp incorporate those allegations contained in the actual fraud counts. They further allege that Dryvit and Bishop "innocently or negligently" misrepresented those facts and that Gemini and Kemp "reasonably and justifiably" relied on those misleading representations.

A finding of constructive fraud requires a showing that a false representation of a material fact was made innocently or negligently, that the injured party was damaged as a result of reliance on the misrepresentation, and the representation would induce a reasonable person to believe it. *See Mortarino v. Consultant Engineering Services, Inc.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996). In *Mortarino*, plaintiffs alleged that defendants committed constructive fraud by misrepresenting the extent to which plaintiffs' property was considered "wetlands." *Id.*, 251 Va. at 292, 467 S.E.2d at 780. The trial court sustained a demurrer to the constructive fraud count and held that plaintiff failed to plead that defendant knew or had reason to know that plaintiff would rely upon the alleged misrepresentations. *See id.*, 251 Va. at 295, 467 S.E.2d at 782. The Supreme Court affirmed the trial court which held that, "Mortarino failed to plead, with the requisite degree of particularity, facts which support all the elements of a cause of action for constructive fraud." *See id.*

The allegations concerning constructive fraud in the instant case lack the requisite degree of particularity to sustain such an action. Gemini and Kemp incorporate those allegations within their actual fraud heading and, as noted above, those allegations fail to describe specifics as to the time and place of the fraud and who committed the fraud. Additionally, like the pleadings in *Mortarino*, Gemini and Kemp have failed to plead that Dryvit and Bishop knew or had reason to know that Gemini and Kemp would rely

upon the alleged misrepresentations. Subsequently, Gemini and Kemp's constructive fraud claims do not survive demurrer.

Finally, a valid cause of action for civil conspiracy must allege "an agreement between two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." *See Glass v. Glass*, 228 Va. 39, 41, 321 S.E.2d 69, 74 (1984).

In their count of civil conspiracy, Kemp alleged that Dryvit and Bishop were co-conspirators in marketing EIFS, while being aware of "numerous failures which occurred when EIFS trapped water that entered into the building's envelope at numerous points." Kemp's Cross-Claim, p. 23. The count further alleges that, "Upon information and belief, Dryvit, other manufacturers, and other members of EIMA, including Bishop Wall Systems, Inc., reached an express agreement or understanding to suppress knowledge about the defects and hazards of EIFS while marketing EIFS without adequate testing or warning." *Id.* Kemp's allegations fail to allege facts sufficient to show an agreement between Dryvit and other manufacturers. The claims refer to an "express agreement or understanding" between manufacturers but fail to indicate the specific individuals involved or the time and place of such agreements. Additionally, this Court entered an order on June 18, 2002, sustaining Dryvit's demurrer against an identical civil conspiracy claim. For these reasons, the demurrer to the count of civil conspiracy is sustained.

In conclusion, Gemini and Kemp's allegations of actual and constructive fraud fail to allege facts sufficient to reach the degree of particularity required to maintain such actions. Furthermore, Kemp's allegations of civil conspiracy lack specific facts showing actual agreements between Dryvit and other manufacturers. For these reasons, Dryvit and Bishop's demurrers to Gemini and Kemp's counts of actual fraud, constructive fraud, and civil conspiracy are sustained. If they wish to amend, they may have ten days from the entry of the order reflecting this ruling.